Priscilla B. GREEN
v.
WATERFORD BOARD OF EDUCATION et al.

Civ. No. 14722.

United States District Court,
D. Connecticut.

April 12, 1972.

Martin A. Gould, Hartford, Conn., for plaintiff.

Melvin Scott, New London, Conn., Jerome E. Caplan, Hartford, Conn., for Waterford Education Assn.

## RULING ON MOTION TO DISMISS

BLUMENFELD, Chief Judge.

Priscilla B. Green instituted this lawsuit to challenge the validity of the order of the school board of the Town of Waterford that she take a leave of absence from her job as a teacher when she reached the sixth month of her pregnancy. She alleges that by the application of a provision relating to maternity leave in her teaching contract, the Waterford Board of Education violated her right to due process and equal protection of the laws under the fourteenth amendment to the Constitution of the United States. The specific portion of the contract which is the target of her constitutional challenge provides that:

> "A maternity leave shall begin not less than four months prior to expected confinement or at such earlier time as a replacement becomes available. . . ."

She sought an injunction against placing her on leave from "her . . . position (as a teacher) until such time as her gynecologist shall deem that she is physically unable to continue to teach, or until January 31, 1972, whichever shall sooner occur." That application for a temporary injunction was denied on the ground that, since money damages would be fully compensatory, there was no showing of possible irreparable injury. Cf. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 399, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). Her claim is now limited to damages for her loss of salary from November 17, 1971, when her maternity leave began, to January 31, 1972.

The defendants have moved to dismiss for lack of federal jurisdiction.

### Jurisdiction

Where, as here, a complaint alleges the deprivation of a constitutional right by persons acting under color of state law, it has sufficiently stated a cause of action under 42 U.S.C. § 1983.

Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Jurisdiction is present under 28 U.S.C. § 1343(3),[1] without regard to the amount in controversy. Lynch v. Household Fin. Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).[2]

## I.

The facts are briefly stated. The plaintiff, Priscilla B. Green, was employed by the Waterford Board of Education as a teacher. The plaintiff was a member of the teachers' union, Waterford Education Association. On July 1, 1971, the defendant Board of Education and the plaintiff entered into an employment agreement for the period of September 1, 1971, to August 31, 1972, subject to the terms of the collective bargaining agreement which the Board of Education of the Town of Waterford had with the defendant Waterford Education Association. The plaintiff was a non-tenured teacher. The provisions in the contract pertinent to this case are:

## "ARTICLE XIV—MATERNITY LEAVE

"As soon as any teacher shall become aware of her pregnancy, she shall forthwith apply in writing to the Superintendent of Schools for a maternity leave of absence, and shall accept a leave of absence as provided by the Board of Education.

"A maternity leave shall begin not less than four months prior to expected confinement or at such earlier time as a replacement becomes available. The leave shall extend only for the current year. This leave shall also be extended for the following school year for tenure teachers upon written request.

"Teachers on maternity leave shall be placed on a waiting list for future appointment and shall have priority for a vacancy. Maternity leave shall not result in loss of accumulated sick leave or loss of tenure. This paragraph does not apply to non-tenure teachers.

"Any woman who is aware of her pregnancy prior to August 1, shall only return to school in September at the discretion of the Superintendent." [3]

The plaintiff applied for maternity leave in accordance with the contract on September 20, 1971. She received a response by letter dated October 15, 1971, in which the Superintendent of Schools of the Town of Waterford notified her that the Waterford Board of Education had voted to grant her request for a maternity leave in accordance with Article XIV of the agreement between the Wa-

---

1. 28 U.S.C. § 1343(3) provides:
   "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   
   \*       \*       \*       \*       \*
   
   "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

2. In view of the disposition which follows, the court need not decide whether the complaint ought to be dismissed against the Board of Education on the ground that it is not a "person." *Compare*

Monroe v. Pape, 365 U.S. 167, 190, 191, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) *with* Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971). See also, Harkless v. Sweeny Independent School Dist., 427 F.2d 319, 321–323 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Dailey v. City of Lawton, 425 F.2d 1037, 1038–1039 (10th Cir. 1970); Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969). Even if the complaint against the board were dismissed, the defendant Cupello would remain a proper party.

3. Although the plaintiff admits she was aware of her pregnancy prior to August 1, 1971, she failed to notify the Superintendent of Schools of this fact as required by the contract.

terford Board of Education and the Waterford Education Association "effective at such time as a suitable, certified replacement may be secured."

On October 18, 1971, the Waterford Education Association filed a grievance on behalf of the plaintiff requesting that she be permitted to teach until January 31, 1972. Her grievance was denied. By letter dated November 2, 1971, the Superintendent of Schools of the Town of Waterford notified the plaintiff that her replacement had been secured and would assume the plaintiff's duties on November 17, 1971. The November 2, 1971, letter included the following:

"This is to officially notify you that a suitable, certified replacement for your teaching position has been secured. She will assume your classroom duties on Wednesday, November 17, 1971, at which time your Maternity Leave will commence. To assure continuity with your students, your replacement has been requested to observe your classes on Monday and Tuesday, November 15th and 16th. The administration of Waterford High School and I have decided that considering the best interest of the students involved, the most appropriate time to make this change is at the end of the first quarter."

### Equal Protection

■ Relying on the constitutional prohibition that "(n)o State shall . . . deny to any person within its jurisdiction the equal protection of the laws," United States Constitution, Amend. XIV, § 1, the plaintiff advances the contention that the "Maternity Leave" provision requiring an expectant mother to apply for and accept a leave of absence to begin not less than four months prior to her expected confinement is so arbitrary and discriminatory against the plaintiff and women in general that it violates her constitutional rights.

"The Constitution in enjoining the equal protection of the laws upon States precludes irrational discrimination as between persons or groups of persons in the incidence of a law. But the Constitution does not require situations 'which are different in fact or opinion to be treated in law as though they were the same.' Tigner v. [State of] Texas, 310 U.S. 141, 147 [, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 130 A.L.R. 1321] (1940)." Goesaert v. Cleary, 335 U.S. 464, 466, 69 S.Ct. 198, 199, 93 L.Ed. 163 (1948).

The traditional test of equal protection is whether the classification at issue is "without any reasonable basis." Shapiro v. Thompson, 394 U.S. 618, 638 n. 20, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). More fully stated:

"The distinctions . . . must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal." McDonald v. Board of Election Comm'rs, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).

See also Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

Instead of this traditional test, which clothes the statutory classification with a presumption of constitutionality, the plaintiff urges the court to employ a stricter standard of review requiring it to hold the classification unconstitutional "unless (it is) shown to be necessary to promote a *compelling* governmental interest." Shapiro v. Thompson, *supra*, 394 U.S. at 634, 89 S.Ct. at 1331 (emphasis in original). Testing a classification by its necessity rather than by its rationality has been required in cases where the classification serves to penalize the exercise of a right expressly safeguarded by the Constitution, e. g., Sherbert v. Verner, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (free exercise of religion), or of one regarded as equally fundamental, e. g., Kramer v. Union Free School Dist., 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (right to vote); Shapiro v.

Thompson, *supra* (right to travel); McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (right to be free of racial discrimination).

█ Before deciding whether a classification is based on a real difference, it is important to consider the nature and relative importance of the alleged right with respect to which the denial of equal protection is asserted. A more exacting standard of review is required for any regulation which places a condition on the exercise of a "fundamental" right. "Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling." Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960). So let us observe the matter more closely. Without a doubt, there is an area of fundamental personal liberty in matters relating to marriage, the family, and children. This was summarized by Mr. Justice White in Griswold v. Connecticut, 381 U.S. 479, 502–503, 85 S.Ct. 1678, 1691, 14 L.Ed.2d 510 (1965):

"It would be unduly repetitious, and belaboring the obvious, to expound on the impact of this statute on the liberty guaranteed by the Fourteenth Amendment against arbitrary or capricious denials or on the nature of this liberty. Suffice it to say that this is not the first time this Court has had occasion to articulate that the liberty entitled to protection under the Fourteenth Amendment includes the right 'to marry, establish a home and bring up children,' Meyer v. [State of] Nebraska, 262 U.S. 390, 399 [43 S.Ct. 625, 626, 67 L.Ed. 1042], and 'the liberty . . . to direct the upbringing and education of children,' Pierce v. Society of Sisters, 268 U.S. 510, 534–535 [45 S.Ct. 571, 573, 69 L.Ed. 1070], and that these are among 'the basic civil rights of man.' Skinner v. [State of] Oklahoma, 316 U.S. 535, 541 [62 S.Ct. 1110, 1113, 86 L.Ed. 1655]. These decisions affirm that there is a 'realm of family life

which the state cannot enter' without substantial justification. Prince v. [Com. of] Massachusetts, 321 U.S. 158, 166 [64 S.Ct. 438, 442, 88 L.Ed. 645]. Surely the right invoked in this case, to be free of regulation of the intimacies of the marriage relationship, 'come(s) to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' Kovacs v. Cooper, 336 U.S. 77, 95 [69 S.Ct. 448, 458, 93 L.Ed. 513] (opinion of Frankfurter, J.)." (Concurring opinion upholding the right of married persons to use birth-control devices.)

And the right to procreate has been identified as so fundamental as to require strict scrutiny of state action which adversely affects it. Skinner v. Oklahoma ex rel. Williamson, *supra*, 316 U.S. at 541, 62 S.Ct. 1110 (a compulsory sterilization scheme irreparably destroying the ability to procreate). In this case, however, it is clear that the contractual requirement that the plaintiff take a "maternity leave" at the beginning of the sixth month of her pregnancy does not negatively affect her right to have children, or to be let alone in the control of her body processes, her home, her marriage, or her children.

The whole thrust of the challenged provision of the contract is not against her right to bear children whenever she wishes, but against her freedom to decide for herself when she has become so physically disabled as to impair her ability to function efficiently as a school teacher. Her contention does emphasize the troublesome biological reality that her pregnancy will at some point come to term and result in her taking a leave of absence from her school-teaching obligations. Yet, despite her prior agreement with the school board, arrived at through collective bargaining between the board and the association, she now insists that the maternity leave provision is an interference with her fundamental right of procreation, and that the state must show a compelling state in-

terest in order to restrict her right to decide when to begin her maternity leave. The plaintiff is mistaken in equating her right to procreate with her desire to decide for herself when to begin the leave which inevitably must be taken. The maternity leave provision in the contract may have caused her to shift some economic arrangements she had in mind, but despite the fact that she asserts her claim "with constitutional banners waving high," Farrell v. Joel, 437 F.2d 160, 163 (2d Cir. 1971), the sole effect of the board's action in enforcing the contract was that her current receipts of salary payments stopped sooner than she desired.

■ In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), a state regulation had a much more direct adverse impact on the right to have children than in this case. Nevertheless, the Supreme Court applied the traditional standard of equal protection review in upholding the Maryland maximum grant regulation which limited the total amount of welfare aid any one family may receive under the Aid to Families with Dependent Children program.[4] The same standard of review is applicable here. Cf. Note, Sex Discrimination & Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv.L.Rev. 1499, 1506 (1971).

In determining whether the "maternity leave" provisions are a denial of equal protection we are taught that:

"The Equal Protection Clause does not, of course, require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious." Avery v. Midland County, 390 U.S. 474, 484, 88 S.Ct. 1114, 1120, 20 L. Ed.2d 45 (1968).

And, in making that determination, "(a) statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Dan-

dridge v. Williams, *supra*, 397 U.S. at 485, 90 S.Ct. at 1161, *quoting* McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

II.

■ It is well established that there is no constitutionally protected right to government employment. Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950), aff'd by an equally divided court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951); Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961); Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971). The plaintiff's right to employment by the defendant board arose out of a contract of employment, the terms of which were negotiated between the board and the Waterford Education Association, of which she was a member. It is not alleged that the contract was breached, or that there was fraud in its inducement. Since she had not acquired tenure, no rights for employment in the future are in issue, nor does she claim any. Cf. Hopkins v. Wasson, 227 F.Supp. 278 (E.D.Tenn.1962). Thus, there is no right of legal redress of any value by virtue of the contract. The plaintiff's only right is not to be the subject of an arbitrary and invidious state classification.

The maternity leave provision, achieved as a result of bargaining between the Waterford Education Association and the Board of Education, is clearly not so lacking in rational basis as to be arbitrary and invidious. The plaintiff acknowledges that at some point prior to the birth of her child she would have had to take a maternity leave. It is not irrational that, in order to achieve an orderly transition between teachers, the Board of Education required substantial advance notice of her termination date. That the board, with the concurrence of the teachers' associa-

4. As a result, while most families received benefits sufficient to meet the state's defined standard of need, very large families, whose needs exceed $250, received less than their computed need.

tion, chose to fix that date at the end of five months of pregnancy was well within the bounds of reason. It was not required to go through a "battle of obstetricians" in each case to determine when a particular teacher would be required to leave before it could locate a replacement teacher and offer her a definite starting date.

Two recent United States District Court cases reached conflicting decisions on whether a pregnant teacher could be required to take maternity leave. Relying on unrefuted medical evidence that there was no medical reason for the board's regulation that leave be taken at least four months prior to the expected birth of the child, the court in Cohen v. Chesterfield County School Bd., 326 F. Supp. 1159 (E.D.Va.1971), held that the regulation denied equal protection of the laws in violation of the fourteenth amendment. The opposite result was reached in La Fleur v. Cleveland Bd. of Educ., 326 F.Supp. 1208 (N.D.Ohio 1971), where it was held that the requirement that the teacher's leave be taken five months before the normally expected date of birth of the child was not so wanting in rational justification as to offend the equal protection clause. That court found that the regulation minimized the sudden disruption of students' classroom programs due to unforeseen complications in the teacher's physical condition and provided time to allow a new teacher to become familiar with the classroom program and the students under the guidance of the original teacher, who is about to depart. Concern for the teacher's health and safety while in her state of advanced pregnancy was also regarded as a permissible factor for the board to take into account in testing whether the regulation was so arbitrary as to render it invidiously discriminatory. Cf. Schattman v. Texas Employment Comm'n, 459 F.2d 32 (5th Cir. 1972).

This court does not agree with the court's opinion in Cohen v. Chesterfield County School Bd., *supra,* that medical evidence to support the "fifth month rule" is required before the rule may be found rational. Concern for the safety of the teacher and her unborn child is only one factor which should be taken into account by the board in formulating its maternity leave provision. What effect an advanced state of pregnancy would have on the efficiency of a teacher or on the morale and efficiency of other teachers and on the students the court does not know, nor is it required to ascertain. It is amply clear that the maternity leave provision, mutually adopted by the board and the teachers is not arbitrary, capricious or invidious.

The administrative problem of finding a replacement has been discussed above. Decisions as to how best to operate a school system may, in the opinion of the court, be made on other than medical evidence.

In speaking of judicial interference in the operation of a public school system in another context, what the Court said in Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968), is not irrelevant here:

> "By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems *and which do not directly and sharply implicate basic constitutional values.*" (Emphasis added).

■■ From the examination of the pleadings, the evidence and the statements of counsel at the hearings on the application for a temporary injunction and on the motion to dismiss, it is clear that there is no genuine issue of material fact pertinent to the dispositive issue. Fed.R.Civ.P. 56(d). The court holds that the maternity leave provision at issue is not so lacking in rational basis as to constitute a denial of equal protection. Nor was the plaintiff denied due process of law in the application of that provision to her. The complaint is dismissed on the merits.

So ordered.