Margaret Mart J. Mangan, J.
Petitioner, an 18-year-old male, brings this special proceeding (GPLR art. 78) for an order directing the respondent, the Clerk of the City of New York, to issue him a marriage license without petitioner first obtaining his parents’ written consent. He alleges that subdivision 2 of section 15 of the Domestic Relations Law unconstitutionally discriminates against him as a male because there is no comparable provision requiring an 18-year-old female to obtain parental consent to marry.
Subdivision 2 of section 15 of the Domestic Relations Law provides that, if “ the man is under twenty-one years of age # * * or * * * woman is under the age of eighteen years * * * then the town or city clerk before he shall issue a [marriage] license shall require the written consent to the marriage from both parents of the minor or minors ”.
The statute is presumptively constitutional (Lincoln Bldg. Assoc. v. Burr, 1 N Y 2d 413, 418) and it will not be disturbed unless there is a clear showing otherwise (8 N. Y. Jur., Constitutional Law, § 79). “ Statutory discrimination will not be set *664 aside if any state of facts reasonably may be conceived to justify it.” (McGowan v. Maryland, 366 U. S. 420, 426). Discriminatory classification is not illegal if it is “ reasonable, not arbitrary, and * * * rest(s) upon some ground of difference having a fair and substantial relation to the object of the legislation.” (Royster Guano Co. v. Virginia, 253 U. S. 412, 415; Reed v. Reed, 404 U. S. 71, 76; Matter of Patricia A., 31 N Y 2d 83, 88).
There is no dispute that marriage “ is a social relation subject to the State’s police power.” (Loving v. Virginia, 388 U. S. 1, 7). The immediate issue presented is whether there is an appropriate governmental interest in requiring the petitioner to obtain parental consent to marry while not fixing the same requirement for an 18-year-old female.
The respondent says that there is the appropriate interest. He contends that the primary obligation to support the family is the husband’s (Domestic Relations Law, § 32; Family Ct. Act, §§ 412, 413, 414, 442 and 443), thereby creating an inequality in the marriage relation which, in turn, justifies discrimination in the form of requiring parental consent for the male to marry, at least until he is 21.
Discriminatory classification regarding the marriage of minors existed at common law — “ males [could marry] at the age of fourteen and females at twelve.” (Bennett v. Smith, 21 Barb. 439, 441; see, also, Wolf v. Wolf, 194 App. Div. 33, 35). The matter is now regulated by statute, which in most jurisdictions has materially increased the age requirements (52 Am. Jur. 2d, Marriage, § 14). Forty of the States and the District of Columbia fix different ages for males and females to marry with parental consent. Twenty-nine of the States have different age requirements ior marriage without parental consent. Only nine States allow an 18-year-old to marry without parental consent (Am. Jur. 2d, Desk Book, Document No. 124, “ as of October 1, 1971”). In New York the different age requirements for marriage became law in 1907 (L. 1907, eh. 742; cf. L. 1896, ch. 272) and have remained the .same to date. This discrimination, then, is an ancient rule, time-honored, and the public policy of this State and much of the Nation.
Parallelling this discrimination both at common law and presently, by statute is the primary obligation of a husband or father to support his wife and children. (16 N. Y. Jur., Domestic Relations, §§ 517, 532.) Presumably, interwoven in the latter obligation is the recognition that natural order, taught both by history and reason, designates the male as the provider in the usual *665 marriage relation. That duty, different in recognizable degree than the other mutual duties of marriage, is sufficient reason to require males to be older and generally more suited to their duty before they may independently decide to marry.
The court is not unmindful of the stringent rules applied in some equal protection cases, yet, “ the Supreme Court * * * has not yet added sex to the list of suspect classifications ” (Green v. Waterford Bd. of Educ., 473 F. 2d 629, 632). Nor is the court unaware of the current legal thought on the subject of marital age restrictions (see, e.g., “Note: The Uniform Marriage and Divorce Act-Marital Age Provisions ”, 57 Minn. L. Rev., 179) and the recent legislation granting to 18-year-olds rights formerly limited to those over 21. It is significant, however, that both proposed and accomplished reforms have been by the legislative process expressive of public opinion and policy. Indeed, it may be that the classification here will not survive if the proposed constitutional amendment relative to equal rights for men and women is ratified. Yet, even that law, in its present form, does not appear to create .absolute equality between the sexes. “ Congress and the State legislatures can take differences between the sexes into account in enacting laws which reasonably promote the health and safety of the people.” (U. S. Code, Cong, and Administrative News, April 20, 1972, House Report No. 92-539, p. 836).
The right to marry is no less important than the State’s interest in the stability of marriage and society generally. Marriage is an “ institution in the maintenance of which the public is deeply concerned” (Law and the Family, Henry H. Foster, Jr. and Doris Jonas Freed, vol. I, revised, § 1:3). Accordingly, in the presence of a legitimate State interest in the marriage relation and the reasonably conceivable fact that the male will be the provider in the marriage relation, there is a rational basis for the State to provide safeguards affecting the marriage of male minors.
The petitioner has not met the “heavy burden [of] overcoming the strong presumption of constitutionality” of subdivision 2 of section 15 of the Domestic Relations Law. (Lincoln Bldg. Assoc. v. Burr, 1 N Y 2d 413, supra.) The petition is denied and it is dismissed.