**Airman First Class Gloria D. ROBINSON, Plaintiff,**

v.

**Colonel Phillip A. RAND et al., Defendants.**

**Civ. A. No. C-2746.**

United States District Court, D. Colorado.

March 21, 1972.

Larry R. Gaddis, Joe A. Cannon and Loa Elaine Bliss, Colorado Springs, Colo., for plaintiff.

James L. Treece, U. S. Atty., Denver, Colo., for defendants.

MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This case raises difficult questions of the balance to be reached between individual rights and the military's need to control its own affairs. The plaintiff, a woman member of the Air Force (WAF), urges that Air Force Manual 39–10, Reg. 3–15, which provides for the immediate discharge of WAFs who become pregnant, violates her rights under the fifth amendment due process clause. We granted a preliminary injunction and the case is now before us on both parties' motions for summary judgment.

The plaintiff became pregnant and proceedings were begun to discharge her. She requested a waiver of discharge, stating her intention to make the Air Force her career and submitting positive recommendations from several commanding officers. The Secretary of the Air Force denied her request for a waiver and we found previously that she did not have to appeal to the Air Force Board for Correction of Military Records to exhaust her administrative remedies. She gave birth to her child and returned to work approximately three weeks later. She became eligible for promotion to sergeant on June 17, 1971, but the promotion has been withheld pending the outcome of this litigation.

At the outset we note that this case involves a sharp clash between interests very important to our society. The military has always occupied a special position and courts have been reluctant to interfere or to take over the job of "running the army." Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Society has for many years respected motherhood and has considered the right to procreate of utmost importance. More recently courts have been demanding men and women be afforded equal treatment.

This controversy does not suit itself to the mechanical application of any formula of constitutional law. The Air Force regulation is not wholly arbitrary and irrational, nor has the Air Force conditioned employment upon the relinquishment of a specifically enumerated right. See, Van Alstyne, The Demise of the Right-Privilege Distinction, 81 Harv.L.Rev. 1439, 1445–1449. Yet the accused Air Force regulation does operate discriminately, may well be based on outmoded stereotypes, and does force a woman to choose between important private rights and her career. The issues presented require a careful review of the exact nature of the interests involved and an attempt to reconcile these interests, rather than a simple decision whether the individual interests are "fundamental" and whether the state interest is "compelling," which would do nothing to lessen the clash or to make it more tolerable.

(1)

The regulations in force at the time the plaintiff became pregnant forced a woman to choose between having a family or having an Air Force career. She could not give birth to a child or obtain custody of a minor child without losing her position in the Air Force. A WAF's intimate marital relations were burdened with the knowledge that any inadvertent pregnancy could cause her immediate discharge, even if the pregnancy were terminated immediately through miscarriage or other abortion.

The regulations have since been modified so that a WAF may have custody of minor children and discharge proceedings will be halted if a pregnancy is terminated before the discharge is completed. The alterations will allow certain women to be both mothers and career women in the Air Force and will offer some women greater freedom in their sex lives,[1] but it is not our job at this time to examine the constitutional effect of these changes, since the plaintiff in the case before us was operating under and is subject to discharge under the regulations as they were before these changes.

The Supreme Court has had occasion to examine the right "to marry, establish a home and bring up children," Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) and "the liberty . . . to direct the upbringing and education of children," Pierce v. Society of Sisters, 268 U.S. 510, 534–535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925), and has found them to be among "the basic civil rights of man." Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942). The Court has found a "realm of family life which the state cannot enter" without substantial justification. Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). See also, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Restrictions upon procreation must be subjected to "strict scrutiny." Skinner v. Oklahoma, supra. Governmental regulation of these sensitive areas "must be viewed in the light of less drastic means for achieving the same basic purpose." Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

---

1. Numerous restrictions remain on abortions in many states and many women may have strong moral, religious or other personal objections to obtaining an abortion.

### (2)

The interests of the Air Force in this regulation and the relationship of the regulation to those interests are more difficult to analyze, partly because the case was not extensively briefed by the United States Attorney. In opposing plaintiff's motion for a preliminary injunction the United States suggested "accomplishment of the military mission is of the utmost importance, thus demanding maximum utilization of available resources. This necessarily includes personnel utilization." In granting the preliminary injunction we speculated that the Air Force might well be able to justify the regulation, "perhaps as a health regulation." The Air Force did not do so, but instead, the United States Attorney urged us to adopt the position taken by the Ninth Circuit in Struck v. Secretary of Defense, 460 F.2d 1372 (9th Cir., 1971). In the *Struck* case a WAF serving as a nurse in Vietnam was found to be pregnant and discharge proceedings were instituted against her. Judge Madden of the Court of Claims, sitting by designation, found that it would be most "imprudent" for any branch of the military to leave pregnant personnel in a combat zone, and rejected the suggestion that it was "uneconomical and unwise to discharge an officer, whose training has been costly to the Government, because she has become pregnant." *Struck* at 1375.

We find it difficult to determine the value of the regulation as a device to save money, since it is impossible to know the number of pregnancies which are prevented by the regulation or the number of women who would choose to have children were it not for the existence of the prohibition. Thus, even if it can be shown that the ultimate cost to the Air Force of discharging pregnant WAFs is greater than the cost of underwriting the lost time, we cannot say that the regulation has no economic justification. There are two reasons, however, that we do not consider the economic motive very important. First, while conserving funds may provide a rational basis for a regulation, *e. g.*, Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), when important personal interests are put into jeopardy, saving money does not weigh heavily in the balance. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Additionally, WAFs are paid enough that it would seem practical as well as permissible for the Air Force to require them to repay the amount lost to it. Without examining the constitutional ramifications of such an action, it would clearly be less constitutionally objectionable than the present policy of discharging pregnant WAFs.

The personnel utilization problem raised by the defendants in their first brief has two aspects. First, while pregnancy may not interfere with the job performance of many women, other women may be unavailable for duty for a period of several weeks, at a time not of the Air Force's choosing. While this would provide a rational basis for the regulation, it does not go much further. The more important aspect of the personnel utilization problem, and the one the *Struck* case found determinative, is that Air Force personnel, by the nature of their jobs, may be called upon to handle emergencies which could create problems even within the first seven months of pregnancy.

> If, by an error of our own forces, or an attack by the enemy, the hospital of which she [Captain Struck] was in charge or in which she worked had been damaged and patients and hospital personnel had been injured or had been frightened and confused, a not improbable consequence might have been that the Captain, as a result of injury or shock might have suffered a miscarriage, and become a patient instead of a nurse. As such, instead of being a useful soldier, she would have been a liability and a burden to the Air Force . . . . [T]he Air Corps,

when it had become aware of her pregnancy, would have acted imprudently if it had allowed her to remain in the zone of active fighting. *Struck* 460 F.2d at 1374, 1375.

If the Air Force knows that a WAF is pregnant, she can be transferred out of a combat zone or other hazardous duty. This will serve the Air Force's interest as well as, and indeed better than discharging her. So long as a WAF knows that immediate discharge will follow, she is less likely to disclose the fact of her pregnancy at the earliest time that it could cause a problem in the combat zone. Thus this particular personnel problem is *increased* rather than decreased by the regulation.

### (3)

A final factor that must be considered is the importance of allowing the military to regulate its own affairs. The military should not have to take its mind off its defense work and examine all the constitutional ramifications every time it wants to adopt or alter a particular regulation. Certainly people in the military may have to give up a number of their rights. *See, e. g.*, Dash v. Commanding General, Fort Jackson, South Carolina, 307 F.Supp. 849 (D.S.C.1969) and cases cited therein. In all these cases, however, and in the other cases studied by us, when the military has been allowed to override personal rights there has been a military reason for it. The infringement has generally been thought necessary to maintain the morale necessary for an effective army or to maintain discipline. When the courts can protect individual rights only by interfering with this type of interest, and thus only by affecting the day-to-day operations of the military, they are hesitant to do so. However, when they are faced with balancing individual rights against the broader interests of the military, and thus affecting daily operations only indirectly if at all, they are much more willing to protect the rights of the individual. For instance, in habeas corpus proceedings challenging selective service procedures or determinations of conscientious objector status, both of which affect the military's personnel supply, courts have not hesitated to protect the individual interest. Also, courts have been unwilling to permit the financial requirements of the government to override personal interests, and in this respect the military is not different from any other agency. The Air Force has never suggested that the regulation presently before us has any disciplinary intent or any effect on morale. Rather, the only interests involved are personnel supply and finances, both of which are subject to intensive scrutiny in other areas. Since the interests do not affect the daily operations of the Air Force, we are persuaded to give paramount recognition to the rights of the individual in this instance.

The Ninth Circuit characterized the problem they were faced with in *Struck* as one affecting day-to-day operations of the military:

> Captain Struck is asking us . . . to say to the Air Force . . . "you must not, under penalty of contempt of court, separate this woman from her military service. And you must not discriminate against her and prejudice her in her military career by doing what you did to Captain Struck, that is, removing her from the zone of combat, and from the exercise, anywhere, of her professional skill which in Captain Struck's case was that of a nurse." *Struck* 460 F.2d at 1376.

To the extent that the exigencies of a combat situation are relevant, the characterization of the problem by the *Struck* court may well be correct. However, we come to a different conclusion because we are not dealing with the day-to-day operations of the Air Force.

 We agree with *Struck* that pregnant WAFs may be transferred out of combat zones or from other hazardous assignments and must accept whatever prejudice may result to their careers. However, we are of the opinion that such a transfer constitutes a "less dras-

tic means for achieving the same basic purpose" as Air Force Manual 39–10, Reg. 3–15, and must be used as an alternative to discharge. Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed. 2d 231 (1960). It is not clear from the *Struck* opinion whether this alternative was then available to the Air Force. If for some reason Captain Struck would have had to be discharged or permitted to remain in a combat zone, we would in all probability have come to the same decision as did the Ninth Circuit. However, the case before us does not present that problem, and discharge of the plaintiff was clearly not necessary to maintenance of Air Force operations. We therefore find that this regulation as applied to this plaintiff conflicts with the fifth amendment to the Constitution, and the Air Force may not discharge her on account of her pregnancy. Now, therefore, it is

Ordered that plaintiff's motion for a summary judgment be and the same hereby is granted and that defendants' motion for a summary judgment be and the same hereby is denied.