Stephanie **CRAWFORD**

v.

General **Robert E. CUSHMAN, Jr., Commandant United States Marine Corps.**

**Civ. A. No. 6216.**

United States District Court, D. Vermont.

July 12, 1974.

718

Mary Just Skinner, Vermont Legal Aid, Inc., Montpelier, Vt., for plaintiff.

William B. Gray, Asst. U.S. Atty., Allan A. Ryan, Jr., Capt., U.S. Marine Corps, Rutland, Vt., for defendant.

HOLDEN, Chief Judge.

This is an action for a declaratory judgment and a writ in the nature of mandamus to compel the defendant Commandant of the United States Marine Corps to reinstate the plaintiff in the Women's branch of that area of the service. Jurisdiction is invoked under 28 U.S.C. § 1361. The plaintiff Stephanie Crawford's claim is founded on the proposition that her discharge from the Marine Corps, by reason of pregnancy, on May 27, 1970 under service regulations then in effect, constituted a denial of due process and related equal protection standards embodied in the Fifth Amendment of the United States Constitution. More particularly, she complains that under the regulations in force at the time of her discharge, male Marines, with dependents, were permitted to remain in service and female Marines were not. She contends the distinction

made in the regulations discriminates against her by reason of her sex and is arbitrary and capricious. Trial was by the court. The evidence presented established the facts which follow.

### FINDINGS OF FACT

The complainant, Stephanie Crawford, at the age of twenty-one, was accepted for enlistment in the United States Marine Corps on February 5, 1968, for a term of four years. She was a single female person at the time of her enlistment and remained in unmarried status during the entire term of her enlistment contract. After the plaintiff reported for basic training at boot camp she learned that, under prevailing existing regulations, pregnancy would result in an "automatic discharge" from the Marine Corps.

After basic training the plaintiff received instruction in service schools, which included secretarial and data processing training. She was eventually assigned to the Marine Corps Air Station, El Toro, California. Her duty assignment was office work. At this station she resided in open barracks where approximately one hundred fifty female Marines were quartered.

In the course of her enlisted service the plaintiff was hospitalized for various physical and psychological causes. In January 1970 the plaintiff suffered from a stomach ulcer, a virus infection and irregular menstrual periods. During the period from mid-March to the middle of May 1970 the plaintiff reported to the base infirmary on approximately eighteen occasions, complaining of persistent nausea, fainting and blackout spells, abdominal pain and fatigue. On April 20, 1970 the plaintiff was transferred, at her request, to a change in duty assignment because of "emotional pressure." In May 1970, preparatory to minor surgery, it was medically determined that the plaintiff had conceived a child in the preceding March, at or about the time she discontinued contraceptive medication. On May 27, 1970 the plaintiff was discharged "for the convenience of the Government—under honorable conditions." The date of discharge occurred approximately twenty months before the expiration of the term of her enlistment contract.

In discharging the plaintiff, the Commandant of the Marine Corps acted pursuant to rules and regulations of that branch of the service relating to pregnancy and parenthood. On May 27, 1970 the pertinent provisions (MCD P1900.16 ¶ 6012, as modified by change 2 of 21 November 1969) provided:

Discharge or Release from Active Duty for Convenience of the Government

1. The Secretary of the Navy, or the Commandant of the Marine Corps, may authorize or direct the discharge or release from active duty of a Marine for the convenience of the Government for any one of the following reasons:

\* \* \* \* \* \*

A woman member, whether married or unmarried, upon certification by a medical officer that she is pregnant, shall be discharged by her commander, for the convenience of the Government, or in the case of overseas commands, will be transferred to a major Marine Corps command housing Women Marines in the continental United States for discharge. The character of the discharge certificate issued in these cases will be as warranted by the women member's service record, regardless of her marital status. In the case of discharge for reason of the pregnancy of a woman member who is an unmarried minor (under 21 years), her commander will notify her parents or guardian of the fact and reason for the discharge. If, as a result of a spontaneous or therapeutic abortion, or a stillbirth, the woman member's pregnancy is terminated prior to her separation from the service, she will nevertheless be discharged for

convenience of the Government unless she requests, in writing, that she be retained in the service. In such latter case, the woman member, at the discretion of her commander, may be retained in the service, if she is found physically qualified for retention.[1]

Following her discharge, the plaintiff remained in California until the following August. The plaintiff had been previously informed that she would be afforded free medical care during her pregnancy. During her stay in California the plaintiff consulted a naval medical officer at least once. In August 1970 she removed to Burlington, Vermont, preparatory to entering the Elizabeth Lund Home.[2] At Burlington the plaintiff received medical consultation, care and treatment afforded by obstetricians on the staff of the Medical Center Hospital of Vermont. During the prenatal period the plaintiff was confined to her bed as a result of the aggravation, by pregnancy, of a prior back injury. During the seventh month of pregnancy the plaintiff sustained an ankle injury as a result of a fall.

On December 13, 1970 the plaintiff gave birth to a baby girl. The plaintiff's medical records indicate nothing to medically prevent her from carrying on her assigned military occupation as late as her seventh month of pregnancy. Her child, at birth, was full term, normal and healthy. The plaintiff made a good recovery and was able to work six weeks after her hospitalization. The disability caused to the plaintiff, by reason of her pregnancy, was temporary.

The only medical evidence at the trial was presented by the obstetrician who attended the plaintiff during her confinement at Burlington. He testified that there is no physiological reason to prevent women from working during the early stages of pregnancy, absent complications. Most complications which develop during the first four or five months do not usually require hospitalization. Obstetrical problems that occur late in the term can be serious. However, each patient requires individual treatment.

In January 1971 the plaintiff submitted a written reenlistment application to the sergeant in charge of the Marine Corps recruiting office at Burlington, Vermont. After consulting the recruiting headquarters at Albany, New York, the plaintiff was informed at the Burlington office that because she had a dependent child, her application for reenlistment would not be approved.[3] No other cause was given for the rejection of the application. This reason advanced by the recruiting sergeant was in accord with a Marine Corps Order (MCO P1100.61B para. 2209) in effect from September 4, 1970 to June 1, 1972. As applied to the plaintiff, it provided

---

1. The regulation further provided:
Commanders shall discharge for the convenience of the Government (in the case of overseas commands, commanders will transfer for discharge to a major command within the continental United States housing Women Marines):
    *    *    *    *    *
b. A woman member, whether married or unmarried, when it is established that such woman member:
  (1) Is the parent by birth or adoption of a child under 18 years of age; or
  (2) Has personal custody of a child under 18 years of age; or
  (3) Is the stepparent of a child under 18 years of age and the child is within the household of the woman member

for a consecutive period of more than 30 days a year; or
  (4) During her current enlistment or extension of enlistment, she has given birth to a living child.

2. The Elizabeth Lund Home is a facility for the care and treatment of unwed mothers during the period of their confinement.

3. The plaintiff's handwritten application was returned to her without further action. It was received in evidence. (Pltf. Ex. 5.)
Eligibility guidelines for reenlistment in the Marine Corps specify conduct and proficiency ratings of 4.0 minimum on a zero to 5.0 scale. At the time of her discharge the plaintiff had a conduct average of 3.9; her proficiency rating was 4.2.

—Women applicants who have a child or children under 18 years of age are unacceptable for enlistment or reenlistment.[4]

At the time the plaintiff was released from military service she offered no objection to her discharge. At the trial she testified she wanted to remain in the Marine Corps and would have gone to any duty station where she might be assigned. She wanted her child to remain with her; in the event of assignment where dependents were not allowed, she would arrange for the child's care elsewhere. The plaintiff's daughter remained with her until January 1974. Since that date the child has been in a foster home.

The plaintiff was married on June 10, 1972 to a member of the United States Air Force, with whom she lived for five weeks. She then separated and divorce proceedings were pending at the time of this trial.

In 1970 there were approximately 310,000 Marines on active duty. Of this number, 2,000 were women. The military missions of the Marine Corps require readiness and mobility. To serve these capabilities, all personnel are expected to respond on short notice and without restriction, to orders that might direct expeditious movement from one location to another. The demands of readiness and mobility are made on all personnel.

Each woman in the Marines is assigned a skill. Her duty station is determined by the needs of the service for the particular specialty at various locations where the Marine Corps is located. The only restriction referred to in the evidence, concerning the assignment of women members of the Marine Corps, is that imposed by the provision of 10 U. S.C. § 6015, which forbids their assignment to aircraft engaged in combat missions. Duty on vessels of the Navy is confined to hospital ships and transports. Unscheduled vacancies and replacement transfers in designated skills impose administrative difficulties.

Female enlisted personnel are required to live in barracks, to participate in formations, ceremonial and otherwise. Women Marines are required to attend to daily policing of the barracks at 0600 and report for duty at 0730. There are no nurseries or other facilities at Marine installations for the care of children of Marine personnel.

The Marine Corps maintains no health service of its own; its medical service is provided by Navy officers and corpsmen. At its major bases in continental United States and in overseas stations, where women Marines were assigned, medical facilities are provided. Medical care in a few locations was limited to dispensaries. The dispensary staff would not normally have the capability of providing obstetrical care.

4. From September 4, 1970 to June 1, 1972: MCO P1100.61B, ¶ 2209, read as follows: Dependents

1. Women applicants with no previous Marine Corps service, active or inactive, who are married, or who are the sole or partial support of minor children or other dependents, shall not be accepted for enlistment in the Regular Marine Corps, or the Marine Corps Reserve.

2. Women applicants who are pregnant or who have ever had an illegitimate pregnancy are unacceptable for enlistment or reenlistment.

3. Women applicants who have a child or children under 18 years of age are unacceptable for enlistment or reenlistment. The term "child or children" means offspring of the woman herself, stepchildren, adopted or foster children. The fact that she has surrendered all rights to custody or control of the child or children through divorce proceedings or through formal adoption does not alter her status of unacceptability for enlistment or reenlistment.

4. Women applicants who are married or have dependents over 18 years of age, have previous Marine Corps service, active or inactive, may be accepted for enlistment or reenlistment in the Regular Marine Corps provided they are eligible for appointment or reappointment to the grade of corporal or higher in accordance with current instructions. Prior approval must be given by the Commandant of the Marine Corps (Code DP).

At the time the plaintiff was released from military service, the only temporary physical disability which was cause for mandatory discharge was that of pregnancy. This was revised by way of an official bulletin, issued by the Department of the Navy Headquarters, United States Marine Corps, on March 26, 1971. The bulletin announced that all separation policies in reference to dependency status, parenthood and pregnancy of women officers and enlisted personnel, were being reviewed. Pending such review, it was ordered:

a. In those instances in which a Woman Marine would normally be separated by reason of pregnancy, she will be advised that she may request retention, and that separation shall not be effected until the woman's request for retention has been considered by the Commandant of the Marine Corps. Requests for retention from reservists not on active duty should be forwarded to the Commandant of the Marine Corps (Code AF). All requests will be processed as expeditiously as possible and should include the woman's personal request for retention, a recommendation by her commanding officer and a medical officer's report. Each case will be considered on an individual basis.

b. In those cases wherein the officer or enlisted woman desires separation by reason of pregnancy, separation action should be taken in accordance with reference (a).

The review resulted in a regulation which continued the change announced in the preceding bulletin.[5]

5. The quoted regulation was later modified, June 28, 1972, by MCO P1900, 16A ¶ 1612, presently in effect:
Discharge or Release from Active Duty for Convenience of the Government
1. The Secretary of the Navy, or the Commandant of the Marine Corps, may authorize or direct the discharge or release from active duty of a Marine for the convenience of the Government for any one of the following reasons:
\* \* \* \* \*
c. Pregnancy and adoption (see paragraph 6012.3b and c, below, for specific details and waiver provisions).
Commanders shall discharge for the convenience of the Government (in the case of overseas commands, commanders will transfer for discharge to a major command within the continental United States housing Women Marines):
\* \* \* \* \*
b. A woman Marine, whether married or unmarried, when it is established such woman:
(1) Is pregnant; (see figure 5–2, Eligibility for Maternity care). If as a result of a spontaneous or therapeutic abortion, or a stillbirth, the woman Marine's pregnancy is terminated prior to her separation from the service, she will nevertheless be discharged for the convenience of the Government unless she requests, in writing, that she be retained in the service. In such latter case, the woman Marine, at the discretion of her commander, may be retained in the service, if she is found physically qualified for retention. The character of the discharge certificate issued in these cases will be as warranted by the woman Marine's service record regardless of her marital status. In the case of discharge for reason of pregnancy of a woman who is an unmarried minor (under 21 years), her commander will notify her parents or guardian of the fact and reason for discharge.
(2) Is the parent by birth of a child under 18 years of age; or
(3) During her current term of service, she has given birth to a living child.
c. A woman Marine when it is established that such woman:
(1) Is the parent by adoption of a child under the age of 18 years; or
(2) Has personal custody of a child under the age of 18 years; or
(3) Is the stepparent of a child under the age of 18 years who is within the household of the woman for a consecutive period of more than 30 days a year.
d. Waivers of the provisions of subparagraph 6012.3b, c above may be requested from the Commandant of the Marine Corps (Code DM) in those cases where the Woman Marine is a parent, stepparent, has personal custody of, or adopts a child. Each request will be considered on its own merits, taking into consideration

There are not now, nor have there been during the time of the plaintiff's enlistment, any Marine Corps regulations which disqualify applicants for enlistment, either male or female, from service on the grounds they have engaged in sexual intercourse. There are no regulations which require the discharge of a male Marine because he has impregnated a woman. There is no disqualification for his enlistment or reenlistment for such cause. Marine Corps regulations, relevant in time to this case, contain no provision which subjects a service man to discharge for begetting a child or children in or out of wedlock. Marine Corps regulations on May 27, 1970, as they relate to enlistment and reenlistment of male applicants with one or more dependents, were subject to special conditions of eligibility.[6]

## CONCLUSIONS

■ Persons in civilian life, at least, have a right "to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972). Rules and regulations which undertake to penalize a pregnant governmental employee by mandatory termination provisions impose unconstitutional burdens on protected freedoms. Cleveland Board of Education v. LaFleur, 414 U.S. 632, 640, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

■ The military regulations required the defendant's predecessor to discharge the plaintiff upon the certification that she was pregnant. Because pregnancy is a physical condition unique to women, the plaintiff's challenge of the regulations is based principally on sexual discrimination. Where discrimination is the question, equal protection concepts afford "a more explicit safeguard of prohibited unfairness" and apply not only to the states, but to the federal government as well by way of the Due Process Clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 499–500, 74 S.Ct. 693, 98 L.Ed. 884 (1954). In the context of this case, the court is called up to search the question presented in the range of equal protection standards.

The Supreme Court, in the majority, has not yet regarded classifications

such factors as length of service of the requestor, ages and number of children involved, record of individual and the Commanding Officer's evaluation of the situation. Any waiver so granted will be effective only so long as parenthood, stepparenthood or custody does not conflict with normal career assignment.

6. The Marine Corps rules and regulations governing the eligibility of male applicants for enlistment and reenlistment into the Marine Corps, MCO P1100.61B para. 2109, in effect at the time the plaintiff applied for reenlistment provided:

1. Male applicants with only one dependent are acceptable for enlistment in the Marine Corps or Marine Corps Reserve, Category "J", if otherwise qualified, and such enlistment will not in the opinion of the recruiting officer impose unusual financial hardship on the individuals concerned. Prior to effecting such enlistment, both husband and wife will certify that they understand the following:
   (a) Limitations on dependents travel reimbursement.
   (b) Limitations on shipment of household effects.
   (c) Limitations as to eligibility for dependent housing.
   (d) The probability of applicants assignment overseas unaccompanied by dependent.

2. Individuals with more than 1 dependent, other than those classified 1A by Selective Service and not eligible for reappointment to the grade of corporal or above, will not be enlisted without authority from the Commandant of the Marine Corps (Code DP). Requests for waiver will only be submitted in cases where entry pay and allowances would not impose a hardship on his dependents or himself. Waiver requests will be submitted as per paragraph 2113.

3. Individuals who have dependents will have the originals or certified copies of the following documents in their possession at the time of departure for recruit training:
   (a) Marriage certificate.
   (b) Divorce decrees.
   (c) Birth certificates of all children.

based on sex to be inherently suspect and subject to close judicial scrutiny. See Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (concurring op. Powell, J.); Green v. Waterford Board of Education, 473 F.2d 629, 632 (2d Cir. 1973).

The undivided opinion of the Supreme Court, expressed by Chief Justice Burger in the related context of Reed v. Reed, Administrator, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) is —"A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

The facts of this case call upon this court to determine—first, whether the demands of equal protection prevented the Commandant of the Marine Corps from discharging the plaintiff on May 27, 1970 by reason of her pregnancy alone; secondly, whether the defendant could deny reenlistment to the plaintiff in January 1971 because she had a child under eighteen years of age, when there were no similar disqualifications in force as to men.[7] The court's consideration of the challenged Marine Corps regulation is confined to those particular provisions which bear directly on the action taken by the defendant's predecessor which adversely affected the plaintiff. The medical evidence presented lends support to the plaintiff's underlying premise that the physical disability which attends a normal pregnancy is temporary. The facts presented here indicate that the plaintiff's pregnancy was not entirely free from complications. In any event, the plaintiff's obstetrician and medical expert related the physical disability from pregnancy to a hard cold,

appendicitis and a fractured limb, that could be accommodated by sick leave. His medical comparisons, as with his medical experience and observation, did not relate to the needs of military life. Although the prenatal debilitative effect might be met by sick leave, the consequences of a normal pregnancy, as far as the mother, the child and the military are concerned, do not terminate with birth. Physical, emotional and practical problems will persist.

The Supreme Court recently renewed the long established recognition—"that the military is by necessity a specialized society separate from civilian society. . . . Indeed, unlike the civilian situation, the Government is often employer, landlord, provisioner and law giver rolled into one. That relationship also reflects the different purposes of the two communities. . . . While members of the military community enjoy many of the same rights and bear many of the same burdens as do members of the civilian community, within the military community there is simply not the same autonomy as there is in the larger civilian community." Parker v. Levy, —— U.S. ——, ——, ——, ——, 94 S.Ct. 2547, 40 L.Ed.2d —— (1974).

Earlier Justice Clark had written for the Court that—"the rights of men in the armed forces must perforce be conditioned to meet overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment." Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L. Ed. 1508 (1953). These considerations make pregnancy in civilian employment situations not comparable to military service.

The Congress has granted to the Secretary of the Navy broad authority to prescribe the manner in which women

---

7. The plaintiff places reliance on recent regulation promulgated under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2) to the effect that a pregnant employee must be accorded the same treatment as that afforded other employees who are temporarily disabled. (29 C.F.R. § 1604–10 (1972).) It is noteworthy that the Equal Employment Opportunity Act of 1972 excludes the armed services from its operation.

members of the Regular Marine Corps shall be trained and qualified for military duty and the type of duty to which they shall be assigned, proscribing only combat duty on aircraft and service on naval vessels except hospital ships and transports. 10 U.S.C. § 6015. Under the civilian direction of the Secretary, the Commandant of the Marine Corps is best able to determine how the mission of that particular arm of service can be most competently performed and what personnel are qualified to completely execute its mission. By regulation applicable to the Marine Corps, it was determined that pregnancy rendered a woman member of the Corps unqualified for military service. This decision is a valid military concern, one in which the judiciary, in the interest of orderly government, should not intrude. See Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

[4] The regulation has a rational basis, not solely in terms of a high level of military readiness and mobility, but upon obvious practical considerations as well. A pregnant servicewoman, whether in early or late stages of that condition, could not be expected to respond to an emergency assignment at a distant station without proper attention to her physical well-being and that her awaited child. After birth, absent adequate nursery and child care facilities, the presence of a child of tender years in a barracks environment would not promote the best interest of either the child or its mother. It would be disruptive to the structured military life to which all members of the command must conform.

Perhaps it can be said that a temporary leave would meet the demands of the situation during normal pregnancy. The termination of sick leave, after childbirth, might well confront the Commandant with the hard choice of ordering the servicewoman to fulfill her duty assignment at the cost of calling upon her to abandon her maternal responsibilities by surrendering her child to the care and custody of others. The consequences of parenthood on the male

Marine are not so disruptive nor severe. The regulation which effected the plaintiff's release from active service was plainly designed to avoid the harsh dilemma that might well attend the retention of a pregnant servicewoman.

Unlike the expectant male parent, the pregnant woman cannot be isolated from the child she has conceived. And as the Court observed in Roe v. Wade, 410 U.S. 113, 159, 93 S.Ct. 705, 730, 35 L.Ed.2d 147 (1973),—"[it is] at some point in time another interest, that of health of the mother or that of potential human life, becomes significantly involved."

According to the evidence, after the birth of her child the plaintiff desired to keep her child and have her remain with her during her enlistment. She asserted this desire at the time of hearing, although the child was then in a foster home. If the defendant should determine that the demands of her assigned duties required her to serve at a station where the child could not be cared for, he could order the separation of the mother from her infant child only at the risk of depriving her of the natural right to the custody, care and nurture of her daughter. See Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L. Ed.2d 551 (1972).

To be sure, service in the armed forces often compels such a separation of servicemen who are fathers. The separation of the male parent from his family might be distressful; the forced removal of an infant child from its mother could well produce a traumatic experience for both.

Unlike Frontiero v. Richardson, *supra*, 411 U.S. at 690, 93 S.Ct. 1764, the plaintiff's discharge and the denial of her reenlistment were not based solely on administrative convenience. The retention of a servicewoman during the term of her pregnancy and the needs of a mother with a dependent child could not be accommodated with the structured life which attends performance of full military duty. The plaintiff's medical histo-

ry established that her service after May 27, 1970 could only be performed at reduced level of physical capability that would overburden the assigned missions of the Marine Corps to constitute a mobile military arm, ready for immediate action within and beyond the continental limits of the United States. The fact that women Marines are not subject to combat duty does not relieve military personnel from the demands of readiness and mobility as a member of a unit assigned to support a combat force. These considerations on the facts presented afford a valid and rational basis for the regulation. Struck v. Secretary of Defense, 460 F.2d 1372 (9th Cir. 1971), cert. granted 409 U.S. 947, 93 S. Ct. 292, 34 L.Ed.2d 217 (1972), vacated and remanded to consider the issue of mootness, 409 U.S. 1071, 93 S.Ct. 676, 34 L.Ed.2d 660 (1972).

The regulation did not operate against women as a class; it reached only women who became pregnant. The fact that pregnancy is the controlling factor does not offend the Equal Protection Clause. Geduldig v. Aiello, —— U.S. ——, ——, 94 S.Ct. 2485, 40 L.Ed.2d —— (1974). The exclusion of male members of the command from the operation of the regulation rests upon a difference that has a fair and substantial relation to the purpose of the regulation. Kahn v. Shevin, 416 U.S. 351, 352–355, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

■ The plaintiff accuses the regulation of adversely affecting her right to bear and raise children. Her enlistment contract was voluntary and under the prevailing regulations it was conditioned upon her ability to perform assigned military duties consistent with the demands of the military mission of the Marine Corps. This included an under-taking on her part that she would not become subject to the debilitating consequence of pregnancy. There is no proscription against intimacy and marriage. As pointed out in Roe v. Wade, *supra*, "The pregnant woman cannot be isolated in her privacy. . . . The woman's privacy is no longer sole and any right of privacy she possesses must be measured accordingly." 410 U.S. at 159, 93 S.Ct. at 730. The Court finds no substantial violation of the plaintiff's right to privacy.

■ The Court agrees with the plaintiff that the revised regulation which permits a pregnant woman member of the Marine Corps to apply for retention to afford individual consideration of the servicewoman who desires to remain on active duty is more flexible and equitable than the regulation it superseded. See Robinson v. Rand, 340 F.Supp. 37 (D.C.Colo.1972); Note, Dismissal for Pregnancy in Government Employment, 25 Maine L.Rev., 85–86 (1973). The Equal Protection Clause permits a state to "take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.—" Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563. The change for a more appropriate rule does not afford an adequate basis for condemning its predecessor as arbitrary and capricious.

The Court holds that the plaintiff's discharge for reason of pregnancy in 1970 and the denial of reenlistment in January 1971, because she had in custody a dependent child under 18 years of age, in keeping with regulations in effect on those dates, were constitutionally valid. The complaint will be dismissed and judgment entered for the defendant. It is so ordered.