465 F.2d 1184
 4 Fair Empl.Prac.Cas. 1070, 4 Empl. Prac.
Dec. P 7921
Jo Carol LaFLEUR and Ann Elizabeth Nelson, Plaintiffs-Appellants,
v.
CLEVELAND BOARD OF EDUCATION et al., Appellees.
The Women's Equity Action League (WEAL) et al. Amicus Curiae
 No. 71-1598.
 United States Court of Appeals,
 Sixth Circuit.
 July 27, 1972.
 
 Carol Agin Kipperman, Chicago, Ill., Lewis R. Katz, Cleveland, Ohio, for appellants.
 Charles F. Clarke, William C. Hartman, George W. Pring, Arthur A. Kola, Isaac Schulz, of Squire, Sanders & Dempsey, Cleveland, Ohio, for appellees.
 Sidney Picker, Jr., Shaker Heights, Ohio, for WEAL, amicus curiae.
 John de J. Pemberton, Jr., Acting Gen. Counsel, EEOC, Julia P. Cooper, Susan Deller Ross, Washington, D. C., Howard Besser, Dist. Atty., Cleveland, Ohio, for EEOC, amicus curiae.
 Lucille Huston, Davis & Young, Cleveland, Ohio, for American Civil Liberties Union, amicus curiae.
 Stephen I. Schlossberg, John A. Fillion, Jordan Rossen, Stanley Lubin, Edwin G. Fabre, Detroit, Mich., for UAW, amicus curiae.
 David Rubin, Deputy Gen. Counsel, N.E.A., Jerry D. Anker, Norman J. Blumenfeld, Lichtman, Abeles & Anker, Washington, D. C., for National Education Assn., amicus curiae.
 Before CLARK, Associate Justice,* PHILLIPS, Chief Judge, and EDWARDS, Circuit Judge.
 EDWARDS, Circuit Judge.
 
 
 1
 This is a complaint alleging violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. It is brought on behalf of two pregnant school teachers in the Cleveland school system under the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983 (1970). Each has been placed on "maternity leave" involuntarily and seeks reinstatement with back pay and injunctive relief against the implementation of the school board's maternity leave policy. Each claims that the school board's rule is an unconstitutional discrimination on grounds of sex.
 
 
 2
 The rule appellants attack has the effect of requiring a pregnant teacher to take unpaid leave of absence from her school duties five months before the expected birth of a child and to continue on such status thereafter until the beginning of the first school term following the date when the baby becomes three months old.
 
 
 3
 The school board rule under attack provides as follows:
 
 
 4
 "Any married teacher who becomes pregnant and who desires to return to the employ of the Board at a future date may be granted a maternity leave of absence without pay.
 
 
 5
 "APPLICATION A maternity leave of absence shall be effective not less than five (5) months before the expected date of the normal birth of the child. Application for such leave shall be forwarded to the Superintendent as least two (2) weeks before the effective date of the leave of absence. A leave of absence without pay shall be granted by the Superintendent for a period not to exceed two (2) years.
 
 
 6
 "REASSIGNMENT A teacher may return to service from maternity leaves not earlier than the beginning of the regular school semester which follows the child's age of three (3) months. In unusual circumstances, exceptions to this requirement may be made by the Superintendent with the approval of the Board. Written request for return to service from maternity leave must reach the Superintendent at least six (6) weeks prior to the beginning of the semester when the teacher expects to resume teaching and shall be accompanied by a doctor's certificate stating the health and physical condition of the teacher. The Superintendent may require an additional physical examination.
 
 
 7
 "When a teacher qualifies to return from maternity leave, she shall have priority in reassignment to a vacancy for which she is qualified under her certificate, but she shall not have prior claim to the exact position she held before the leave of absence became effective.
 
 
 8
 "A teacher's failure to follow the above rules for maternity leave of absence shall be construed as termination of contract or as grounds for dismissal." (emphasis in original)
 
 
 9
 The District Judge who heard this case took extensive testimony, made findings of fact and concluded that the Cleveland Board of Education's rule did not discriminate against women and was not so unreasonable or arbitrary as to be unconstitutional. The basic rationale for the District Judge's holding is set forth as follows:
 
 
 10
 "The evidence shows that the primary purpose for the initiation of this rule was to protect the continuity of the classroom program. The school board maintains this rule in an attempt to bring the disruption of the classroom program to a minimum. They further maintain that use of the one month advance notice requirement gives the school board the most accurate indication as to when the teacher will discontinue her duties and the new instructor will assume the responsibility of the study program. The purpose is also to allow the new teacher to become familiar with the classroom program and the students under the guidance of the original teacher who is about to depart. Furthermore, the purpose is to give the school board notice so that the original teacher's unexpected and sudden leave will not occur, and thus guaranteeing classroom continuity and providing the best possible safeguard against the disruption of the students' education. The intended purpose of the section in the regulation which permits the teacher to return at the beginning of the regular school semester following the child's age of three months is designed to protect the health of the mother and the child and assure continuity of the classroom program." LaFleur v. Cleveland Board of Education, 326 F.Supp. 1208, 1211 (N.D. Ohio 1971).
 
 
 11
 Appellants' contentions are that the rule is arbitrary and unreasonable in its overbreadth and that it is a discriminatory rule applicable to only one sex, in violation of the equal protection clause of the Fourteenth Amendment.
 
 
 12
 It is relevant for us to note two developments which have occurred since this case was argued. First, in a split decision a panel of the Fifth Circuit held a distinctly less onerous maternity leave rule of the Texas Employment Commission not to be arbitrary and unreasonable in a constitutional sense. Schattman v. Texas Employment Commission, 459 F.2d 32 (5th Cir. 1972). (Decided March 1, 1972, order amending Judge Wisdom's Opinion dated March 17, 1972.)
 
 
 13
 Second, Congress has now amended Title VII of the Equal Employment Opportunity Act to make it applicable to public schools. 42 U.S.C. Sec. 2000e(a), P.L. 92-261, 86 Stat. 103 (1972). The EEOC has also adopted a rule prohibiting special maternity leave disability rules as discriminatory on grounds of sex. 29 C.F.R. Sec. 1604.10(b), 37 Fed.Reg. 6837 (April 5, 1972).
 
 
 14
 While clearly neither of these last decisions controls our present case, they do tend to lessen the reach of our holding.
 
 
 15
 The Cleveland Board of Education maternity leave rule was adopted in 1952. It is considerably more severe in its effect upon employment of pregnant teachers than the Texas Employment Commission rule dealt with in the Schattman case, or any other similar rule which has been called to our attention. Depending on the period of the year when the birth of the child was expected, the effect of the rule would be to put any pregnant teacher on involuntary leave for a period ranging from six months to over a year. The Texas Employment Commission rule required leave to be taken two months before expected birth and an application to return to work could be filed at any time thereafter.
 
 
 16
 The principal social purpose claimed to be served by the Cleveland Board of Education rule is continuity of classroom instruction and relief of burdensome administrative problems. Yet any actual disability imposed on any teacher, male or female, poses the same administrative problems and many (including flu and the common cold) can't be anticipated or planned for at all. This rule may arguably make some administrative burdens lighter. But these are not the only values concerned. The Supreme Court reminds us:
 
 
 17
 "The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy which may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.
 
 
 18
 "Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand." Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (decided April 3, 1972) (Footnotes omitted.)
 
 
 19
 The three month enforced unemployment after birth has no relation to the employer's interest at all. While having a mother with her infant for a period after birth may arguably be a question of general state concern, Ohio has not thus far expressed it in any general and nondiscriminatory statute.
 
 
 20
 Appellees also urge consideration of a view expressed by the author of this rule when in 1952 he suggested its adoption. Dr. Schinnerer testified that he thought that absent the rule, pregnant teachers would be subjected to "pointing, giggling and . . . snide remarks" by the students. Basic rights such as those involved in the employment relationship and other citizenship responsibilities cannot be made to yield to embarrassment. See Abbott v. Mines, 411 F.2d 353 (6th Cir. 1969). Additionally, at the present time pregnant students are allowed to continue in the Cleveland schools without any apparent ill effects upon the educational system.
 
 
 21
 If there is substantial support for the Cleveland Board of Education rule to be found in this record, it must be in the testimony of the Board's witness Dr. William C. Wier, who discussed the problems of pregnancy with obvious concern. But Dr. Wier also testified that "each pregnancy is an individual matter." And his cross-examination concluded as follows:
 
 
 22
 "Q How would you advise a working woman who is pregnant as to her continued employment?
 
 
 23
 A I would first inquire what type of employment she was on-doing. If it involved physical activities, and in excess of what I would consider normal or potentially in excess, I would advise her probably that she should stop working at an earlier time than somebody who was sitting entirely at a desk job.
 
 
 24
 ******
 
 
 25
 * * *
 
 
 26
 A (Continuing) What I was going to say is that I have had patients that worked as secretaries throughout pregnancy, and I have seen nurses that worked in the hospital going to term and practically going from the nurse's station up to the delivery room.
 
 
 27
 Now, usually the hospitals-in this situation, would put these nurses in the type of job on the hospital floor in which their physical activities were considerably reduced, and not require them to do as much; but in general I have never said to a patient, 'You can't do this or that.' I can only advise them.
 
 
 28
 Q Doctor, have you treated patients who have worked through or worked beyond the end of the fourth month of their pregnancy?
 
 
 29
 A Of course I have-many.
 
 
 30
 Q Have you always disapproved of this?
 
 
 31
 A No.
 
 
 32
 Q Have you told the women to stop working?
 
 
 33
 A I have on occasion suggested it would be a wiser thing if they discontinued work.
 
 
 34
 Q But not always?
 
 
 35
 A Oh, no."
 
 
 36
 Under no construction of this record can we conclude that the medical evidence presented supports the extended periods of mandatory maternity leave required by the rule both before and after birth of the child.
 
 
 37
 In a case decided after the District Court decision in this case, the United States Supreme Court invalidated a statute of the State of Idaho which specifically preferred male relatives over female relatives as administrators of estates. The Court's opinion commented:
 
 
 38
 "Clearly the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. The crucial question, however, is whether Sec. 15-314 advances that objective in a manner consistent with the command of the Equal Protection Clause. We hold that it does not. To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment; and whatever may be said as to the positive values of avoiding intrafamily controversy, the choice in this context may not lawfully be mandated solely on the basis of sex." Reed v. Reed, 404 U.S. 71, 76-77, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).
 
 
 39
 Here, too, we deal with a rule which is inherently based upon a classification by sex. Male teachers are not subject to pregnancy, but they are subject to many types of illnesses and disabilities. This record indicates clearly that pregnant women teachers have been singled out for unconstitutionally unequal restrictions upon their employment. Additionally, as we have observed, the rule is clearly arbitrary and unreasonable in its overbreadth. As the Supreme Court said in Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952):
 
 
 40
 "We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." Id. at 192, 73 S.Ct. at 219.
 
 
 41
 We believe that the Fifth Circuit's decision in Schattman v. Texas Employment Commission, supra, is easily distinguishable on the facts and that the same is true in relation to Struck v. Secretary of Defense, 460 F.2d 1372 (9th Cir. 1971), which dealt with pregnancy of a female officer in a war zone. On the other hand, there is a marked trend of cases to invalidate regulations based on sex classifications unless supported by a valid state interest. Reed v. Reed, supra; Sail'er Inn v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971); Cohen v. Chesterfield County School Board, 326 F.Supp. 1159 (E.D.Va.1971); Seidenberg v. McSorleys' Old Ale House, Inc., 317 F.Supp. 593 (S.D.N.Y.1970); Kirstein v. Rector and Visitors of University of Virginia, 309 F.Supp. 184 (E.D.Va.1970); Heath v. Westerville Board of Education, et al., 345 F.Supp. 501 (S.D. Ohio 1972).
 
 
 42
 We do not, of course, by our holding concerning this rule deal with reasonable employer requirements of notice of impending disability or of health examinations or certificates. Such issues are not presented by this appeal.
 
 
 43
 The judgment of the District Court is vacated and reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 44
 PHILLIPS, Chief Judge (dissenting in part, concurring in part).
 
 
 45
 I respectfully dissent from the part of the majority opinion which strikes down the regulation pertaining to maternity leave prior to delivery.
 
 
 46
 It is my opinion that the pre-delivery part of the rule of the Cleveland Board of Education under attack on this appeal is a permissible and reasonable exercise of the discretion vested in the Board in the administration of the school system. I see no violation of the rights of teachers under the Equal Protection Clause presented by the facts and circumstances of this case.
 
 
 47
 "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . .
 
 
 48
 By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968) (footnote omitted).
 
 
 49
 The capabilities of its teachers and the maintenance of sound educational environment are matters of legitimate concern to the Board of Education. The evidence presented to the District Court shows that about 225 out of the more than 5800 teachers employed by the Board in the Cleveland school system are on maternity leave at any given time and that approximately 1900 teachers are women of child bearing age. Expert testimony established that every pregnancy impairs to some degree the ability to teach and supervise children. Pregnancy limits the capacity of the teacher to engage in normal physical activity. Mobility is reduced. A pregnant teacher is subjected to an increased risk of unexpected incapacitation. Such impairment and risk increase during the later months of pregnancy. There is no question that the medical condition of a pregnant teacher will require that she discontinue teaching at some point during the course of the pregnancy.
 
 
 50
 Appellants urge that the determination of this point of time should be made on an individual basis, relying on the thirty day notice requirement as ample to meet the objectives of the Board. The record in this case convinces me that there is no assurance that an individualized decision in all cases can be made thirty days prior to the time that medical necessity may require that a teacher discontinue her classroom duties. To impose upon the school system the obligation of examining each teacher individually throughout the course of her pregnancy to insure that she is capable of carrying out the manifold and demanding duties of her profession would constitute a burden more onerous than mere administrative inconvenience.
 
 
 51
 In my view it is not the prerogative of this court to determine whether a better regulation could be promulgated or whether a shorter period of time than the end of four months of pregnancy should be prescribed. We do not sit as a super Board of Education. Our concern is whether the regulation creates an arbitrary or unreasonable classification wholly unrelated to the objectives sought to be advanced by the Board of Education in adopting it. In my opinion, we should not strike down the regulation because it "may be unwise, improvident, or out of harmony with a particular school of thought." See Dandridge v. Williams, 397 U.S. 471, 484, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491.
 
 
 52
 Nor do I agree that the regulation should be invalidated because it applies only to pregnancy and not to other conditions and diseases that incapacitate teachers, both male and female, from classroom duties. It is true that, during the course of a school year, a certain number of teachers will experience illnesses or accidents requiring leaves of absence. The wide range of these incapacitating conditions is such that the Board of Education has seen fit to deal with them on an individual basis. Pregnancy, on the other hand, is a condition of predicable duration and symptoms involving a substantial number of teachers every year. In my opinion a classification dealing with this problem is not so arbitrary or unreasonable as to violate the Equal Protection Clause.
 
 
 53
 It is not every classification that amounts to a denial of equal protection.
 
 
 54
 "The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. . . . [C]lassifications will be set aside only if no grounds can be conceived to justify them. With this much discretion, a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' and a legislature need not run the risk of losing an entire remedial scheme simply because if failed . . . to cover every evil that might conceivably have been attacked." McDonald v. Board of Election Comm'rs, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969) (citations omitted).
 
 
 55
 Upon the evidence presented in the District Court, Judge Connell found that the requirement of maternity leave prior to delivery gives the school system the best assurance that sudden disruption of the classroom program due to unforeseen complications in the condition of a teacher will be minimized. 326 F.Supp. at 1213. I agree with this conclusion. In my view it is not "clearly erroneous." Rule 52(a), Fed.R.Civ.P.
 
 
 56
 With respect to the three months post-delivery waiting period before resuming teaching, I agree with the majority opinion. No evidence was introduced in the District Court and no reasons offered to this court as to how this requirement is related rationally to any legitimate objective of the Board.
 
 
 57
 I would affirm in part and reverse in part.
 
 
 
 *
 Honorable Tom C. Clark, Associate Justice of the Supreme Court of the United States, Retired, sitting by designation