Ann **MITCHELL**, Plaintiff,

v.

**BOARD OF TRUSTEES OF PICKENS COUNTY SCHOOL DISTRICT "A", a body politic and corporate, et al., Defendants.**

**Civ. A. No. 75–143.**

United States District Court,
D. South Carolina,
Anderson Division.

April 6, 1976.

T. Travis Medlock, Craig K. Davis, Columbia, S. C., for plaintiff.

Bruce E. Davis, Camden, S. C., William G. Acker, Pickens, S. C., for defendants.

**514**

## ORDER

CHAPMAN, District Judge.

Plaintiff brought this action because defendants, when informed of plaintiff's pregnancy, failed to rehire or to renew plaintiff's teaching contract for the entirety of the 1972–73 school year, allegedly in violation of her rights secured by the Constitution of the United States and the Civil Rights Act of 1964, as amended.

The amended complaint in this case contains two causes of action which were the basis of two prior actions. Civil Action 72–1123 was an action by plaintiff alleging constitutional infringements cognizable under 42 U.S.C. § 1981 and § 1983. Relying largely on the en banc decision by the Fourth Circuit Court of Appeals in *Cohen v. Chesterfield County School Board*, 474 F.2d 395 (1973) this Court granted defendants' motion for summary judgment and plaintiff filed a notice of appeal on April 30, 1973. On May 30, 1973, plaintiff commenced Civil Action No. 73–634 alleging substantially the same facts but evoking the jurisdiction of the court pursuant to Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e–5. By order filed October 31, 1973, this Court denied defendants' motion to dismiss Civil Action No. 73–634 finding that Civil Action 72–1123 was not res judicata. Subsequently, the Fourth Circuit ordered that the appeal of Civil Action 72–1123 be held in abeyance pending the Supreme Court's decision in the *Cohen* case, and this Court ordered that Civil Action 73–631 also be held in abeyance pending that decision. On August 2, 1974 the Fourth Circuit vacated and remanded this Court's decision in Civil Action 72–1123. In light of those developments, this Court, on January 24, 1975, approved and signed a consent order pursuant to which plaintiff filed her amended complaint, commencing the action now before the Court, which essentially joins Civil Action 72–1123 and Civil Action 73–634 in one complaint. The consent order further provided that upon termination of a reopened discovery period, the case would be submitted to the Court upon the entire record, including but not limited to, depositions, interrogatories, stipulations and legal memoranda, for a decision on the merits.

The basic allegation of the amended complaint is that plaintiff was denied re-employment by the defendants solely because of her existing pregnancy. As stated previously, plaintiff alleges two separate theories of liability. The first cause of action alleges violations of her rights to "due process" and "equal protection" under the Fourteenth Amendment of the United States Constitution. The second cause of action alleges violations of her rights to be free from sexual discrimination as provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2 and guidelines thereunder promulgated, principally found at 29 C.F.R. § 1604(a)–(f) and § 1604.10(a)–(b).

Initially plaintiff sought relief in the form of injunctive relief, back pay and reinstatement, and attorney's fees. Due to changes in her personal and professional life, plaintiff has informed the Court through her attorney that she abandons her claim for reinstatement and her position that defendants' subsequent job offer was not bona fide; and the only relief now sought in this case is as follows: (1) An Order of the Court declaring that the defendants violated plaintiff's rights in not renewing her contract; (2) An Order declaring the defendants liable for back pay to which she would have been entitled during the fall semester only, had she been permitted to teach until such time as a substitute was required; and (3) An Order directing the defendants to pay to the plaintiff court costs and attorney's fees.

Most of the factual allegations in the amended complaint are admitted in defendants' answer; however, liability, under any theory, is denied.

Since the provisions of the previously mentioned consent order have been complied with, there is no necessity for the taking of testimony and the case is ripe for decision. There is very little dispute as to the factual situation set forth in paragraphs 8, 9 and 10 of the amended complaint. The issue here involves mainly a question of

law. After reviewing the entire record and studying the applicable law, the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure, makes the following:

## FINDINGS OF FACT

1. Plaintiff holds a professional teaching certificate for the State of South Carolina and is certified in Spanish and other subjects. She was employed at Easley High School by defendants on May 4, 1971 for the school year 1971–1972, and she served in that capacity teaching five classes in Spanish. Plaintiff performed with excellence as a teacher; and during February 1972, she signed the defendants' form letter of intent to be renewed for the next school year of 1972–73.

2. On April 4, 1972, plaintiff determined she was pregnant, and her personal physician anticipated delivery on or about November 6, 1972. Prior to the date for negotiating the contracts for school year 1972–73, plaintiff gave notice of her condition to the school administrators and engaged in conferences with her principal, making clear her preference to work as long as possible during the 1972–73 school year.

3. Christmas holidays were to be December 15, 1972 through January 1, 1973. The first semester was to end January 16, 1973 and the second semester was to commence January 17, 1973.

4. Barring any unforeseen difficulties, which in fact she did not experience in connection with delivery, plaintiff discussed with her principal the necessity of her being absent for approximately six weeks during the time that classes would be in session, her leave being anticipated to extend from approximately November 1, 1972 through January 1, 1973. The principal suggested that it might be possible for plaintiff to retain her teaching position with prearrangement for her maternity leave.

5. Plaintiff secured the consent of a Mrs. Carter, a person not certified for teaching Spanish, to act as a substitute during the period of plaintiff's absence with the aid of plaintiff's teaching materials and coaching. The principal agreed to this arrangement with the caveat that implementation of such an arrangement would be contingent on the approval by the school superintendent, Dr. Curtis A. Sidden. The superintendent did not approve the plan; and consequently, plaintiff was offered no teaching contract for the school year 1972–73.

6. Plaintiff urged the superintendent to reconsider his position. She stressed the importance of her teaching second year Spanish to those she had taught the first year course. The superintendent did not change his position. At a regular meeting of the defendant Board of Trustees, some of plaintiff's students appeared and presented petitions, signed by 114 of plaintiff's Spanish students, on her behalf. The defendant Board discussed the matter and affirmed the superintendent's decision not to renew plaintiff's contract.

7. The reason defendants did not renew plaintiff's contract for the school year 1972–73 was because they believed a predicted long period of absence from the classroom would cause administrative problems for the school and break the continuity of teaching for the students. This policy is not expressed in the Teacher's Manual [1] given plaintiff prior to the incident in question or any other written form. However, it does appear that defendants' reasoning in the instant case is consistent with an un-

---

1. The "Manual for Teachers 1971–72" sets forth a procedure for fixing the termination data of pregnant teachers *already under contract* and scheduled to deliver during the course of the contract year, as follows:

   *"Maternity Leave*
   The principal of the school shall decide when the presence of a pregnant woman (teacher, student or employee) is detrimental to the satisfactory operation of the school program. In all cases of maternity, women who are under contract with the Board of Trustees must in writing reply to the principal of the school or immediate superior official for termination of the contract as soon as pregnancy is determined. This termination should take effect not less than three (3) months prior to expected delivery date. Exceptions must be approved by the District Superintendent."

written policy followed by defendants. Defendant Sidden's testimony, wherein he refers to affidavits of various persons including school principals, reveals that applicants have been denied employment in the defendant school district because the applicant would not commit himself for the full academic year or it was anticipated the applicant would not be able to work the full contract year. (See Sidden's deposition beginning at page 39 and exhibit 3 attached thereto.) For example, several female applicants were not rehired for the next school year because their husbands planned to graduate from Clemson University in December, and they may be moving from the area. Defendants' policy is also evidenced by defendants refusal to consider a teaching position for a male applicant because he informed defendants he had applied for a civil service position and would take the position if and when he was accepted.

8. Defendants show no examples of denials of employment because of anticipated physical disabilities as in the instant case. However, the Court finds defendants actions in this case were made in good faith with legitimate interests for the educational system and its students in mind. In spite of defendants' good faith, defendants' action of non-renewal was directly attributable to plaintiff's then existing pregnancy.

9. Plaintiff has complied with all administrative procedures necessary to bring an action under Title VII. On or about August 24, 1972, plaintiff filed a complaint, charging employment discrimination against her because of sex, with the United States Equal Employment Opportunity Commission, which organization administers Title VII of the Civil Rights Act of 1962, as amended. After investigation, the director of the EEOC, Atlanta Regional Office, issued a document finding violations of 42 U.S.C. § 2000e relative to prohibitions against employment discrimination based on sex, as set forth in 29 C.F.R. § 1604.10(a) and (b). Defendants rejected the EEOC conciliation proposal, and plaintiff was advised she had the right to institute a civil action under Title VII. Having exhausted all administrative remedies, plaintiff thereafter commenced Civil Action No. 73–634 within the 90 day limitation.

### CONCLUSIONS OF LAW

1. The Board of Trustees of Pickens County School District "A" and its agents are "employers" within the appropriate section of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b). Prior to March 24, 1972 educational institutions were specifically exempt from the provisions of Title VII. However, the EEOC Act of 1972 amended Title VII to withdraw those exemptions. See 42 U.S.C. § 2000e–1. In this case the decision denying employment to plaintiff took place after March 24, 1972; therefore, the provisions of Title VII apply to plaintiff, a school teacher in a public school. *LaFleur v. Cleveland Board of Education*, 465 F.2d 1184, 1186 (6th Cir. 1972), affirmed 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

2. 42 U.S.C. § 2000e–2 provides, in part, as follows:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

The EEOC is the administrative body created by Title VII. It has issued guidelines and these administrative interpretations are entitled to "great deference" in applying the Act. See *Griggs v. Duke Power Co.*, 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158, 165 (1971). The pertinent guidelines in this case are as follows:

"29 CFR § 1604.10—Employment Policies Relating to Pregnancy and Childbirth.

(a) A written or unwritten employment policy or practice which excludes for employment applicants or employees because of pregnancy is a prima facie violation of Title VII.

(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom are, for all job related purposes, temporary disabilities and should be treated as such under any health or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges; reinstatement, and payment under any health or temporary insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities."

■ 3. The Court concludes that defendants' actions violated the above mentioned provisions of Title VII of the Civil Rights Act of 1964, as amended, and the EEOC guidelines promulgated thereunder. This conclusion is based on the finding that plaintiff was denied employment or renewal of her employment solely because of her pregnancy.

4. As revealed in Findings of Fact No. 7, defendants' policy of not hiring applicants or rehiring teachers for the next year when it was foreseeable that they would be unable to complete the year, was not limited to females. However, the other denials mentioned in Findings of Fact No. 7 did not involve physical disabilities, but rather the inability of the person to commit himself to an entire school year because he or she anticipated a different job offer or a relocation from the area of employment. The fact defendants denied plaintiff employment because of her pregnancy is the key to this case because that condition is so much a part of womanhood. Most other physical conditions are shared by men and women alike, in which case plaintiff would be precluded from asserting discrimination based on sex. The Court recognizes that there are physical conditions unique to men, such as a malfunction of the prostate gland. If plaintiff were a male who was not rehired because of an anticipated prostate operation, discrimination based on sex might still be argued. Since individuals of both sexes can suffer physical conditions unique to one sex, this Court finds logic in the position that neither should be allowed to assert discrimination on the basis of sex. However, pregnancy is a physical condition that has received special treatment in the law as it has developed.

■ 5. Defendants argue that their actions were not based upon plaintiff's sex, but upon their desire to prevent a known interruption in the teaching and learning processes. The Court is impressed with defendants' concerns; and, as stated previously, the Court finds that defendants did not intend to discriminate against the plaintiff because of her sex. However, the pertinent provisions of Title VII have been interpreted to proscribe acts that result in sexual discrimination, whether or not the employer acted in good faith. For example, *Gilbert v. General Electric Co.*, 519 F.2d 661 (4th Cir. 1975) involved a Title VII attack upon General Electric's employee disability benefits program which excluded pregnancy-related disabilities. The Fourth Circuit stated the purpose of Title VII as follows:

"The legislative purpose behind Title VII was to protect employees from any form of disparate treatment because of race, color, religion, sex or national origin or, as one commentator has stated it, 'to make employment decisions sex-blind, as well as colorblind'." (cite omitted) (519 F.2d at p. 663).

In affirming the lower court's decision that General Electric's plan was violative of Title VII, Judge Russell, citing *Griggs, supra*, states: "It is of no moment that an employer may not have deliberately intended sex-related discrimination; the statute looks to 'consequences', not intent." Since pregnan-

cy is a disability possible only among women the "consequence" of General Electric's disability program was a less comprehensive program of employee compensation and benefits for women employees than for men employees. Similarly, defendants' actions in the instant case resulted in the denial of a teaching job to plaintiff solely because of pregnancy.

■■■ 6. The one exception to the statutory command of nondiscrimination occurs in those certain instances ". . . where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise . . ." 42 U.S.C. § 2000e–2(e). However, this exception should be interpreted narrowly. 29 C.F.R. § 1604.2(a) (1972) and see *Gilbert, supra*, footnote 22. The Court finds no support for the assertion that excluding pregnant women from teaching jobs is necessary to the normal operation of a school. It is common knowledge that pregnant teachers are able to teach and do teach in many instances for the greater portion of the period of the pregnancy.

7. Continuity of instruction as an objective of school officials is discussed at length in *LaFleur, supra*. *LaFleur* involved a successful attack on the mandatory School Board rules requiring pregnant school teachers to take maternity leave at specified times before expected delivery. The attack was based on constitutional grounds rather than Title VII, which did not apply to state agencies and educational institutions at that time; therefore, continuity is discussed in terms of the state's interest.

"It cannot be denied that continuity of instruction is a significant and legitimate educational goal. Regulations requiring pregnant teachers to provide early notice of their condition to school authorities undoubtedly facilitate administrative planning toward the important objective of continuity. But, as the Court of Appeals for the Second Circuit noted in *Green v. Waterford Board of Education*, 473 F.2d 629, 635:

'Where a pregnant teacher provides the Board with a date certain for commencement of leave . . . that value [continuity] is preserved; an arbitrary leave date set at the end of the fifth month is no more calculated to facilitate a planned and orderly transition between the teacher and a substitute than is a date fixed closer to confinement. Indeed, the latter . . . would afford the Board more, not less, time to procure a satisfactory long-term substitute.' (Footnote omitted.)"

*LaFleur, supra*, 414 U.S. at pages 641 and 642, 94 S.Ct. at page 797, 39 L.Ed.2d at page 61.

The Supreme Court in *LaFleur* makes the point several times that early advance notice helps the school administrators plan for changes and thus serves the goal of continuity. In the instant case plaintiff gave notice in early April 1972 that she would probably be unable to work the first semester beyond November 1, 1972. Defendants cannot complain about the notice given here. In addition plaintiff found a substitute and took other steps to insure that her classes would be able to continue with minimum confusion in her absence. The record clearly indicates that the plaintiff's proposal for her maternity leave would not create the many interruptions asserted by defendants.

8. Since plaintiff had not yet entered into a contract for the 1972–73 school year this case is distinguishable, as stressed by defendants, from *LaFleur* and other cases where the inability to continue employment is made known after employment has begun. However, the statute and regulations quoted herein clearly state it is an "unlawful employment practice" under Title VII to practice sexual discrimination against applicants as well as existing employees. Additionally, plaintiff is not an "applicant" in the usual meaning of that term. She was working for defendants at the time their decision not to rehire her was made, and she had already proven herself to be an excellent teacher as defendants admit. Defendants would have this Court penalize plaintiff because she advised the defendants of

her condition when she first learned of its existence, rather than waiting until it became obvious and until after she had the opportunity of signing a contract for 1972–73. If plaintiff had made her pregnancy known after signing the contract, it appears, from defendant Sidden's deposition, that plaintiff would have been allowed to continue with her work as long as she desired within reason, even though the Teacher's Manual calls for termination in a different manner. (See Sidden's deposition pp. 25 and 26, and the affidavits attached thereto as exhibit # 3).

9. Citing *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), defendants assert not every classification concerning pregnancy is a sex-biased classification; and absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the member of one sex or the other there can be no valid claim of sex discrimination. In *Aiello* the Supreme Court upheld a legislatively created social welfare program for private employees in which a differentiation between pregnancy related and other disabilities was made. *Aiello* dealt with a constitutional attack under the Equal Protection Clause of the Fourteenth Amendment and the Court applied the customary standards in testing legislation under the Equal Protection Clause. It is not necessary that this Court apply those same constitutional standards because the decision here is based on a Title VII violation. Defendants argue that the approach to actions under the Constitution and Title VII are not distinguishable, but the Fourth Circuit in *Gilbert, supra*, has held otherwise.

"In this case, on the contrary, the issue is not whether the exclusion of pregnancy benefits under a social welfare program is 'rationally supportable' or 'invidious' but whether Title VII, the Congressional statute, in language and intent, prohibits such exclusion. Accordingly, as the Court in *Wetzel v. Liberty Mutual Insurance Co.*, [3 Cir., 511 F.2d 199] supra, aptly observed, 'our case is one of statutory interpretation rather than one of con-

stitutional analysis.' There is a well-recognized difference of approach in applying *constitutional* standards under the Equal Protection clause as in *Aiello* and in the statutory construction of the 'sexblind' mandate of Title VII. To satisfy constitutional Equal Protection standards, a discrimination need only be 'rationally supportable' and that was the situation in *Aiello*, as well as in *Reed* [*v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225] and *Frontiero* [*v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583]. The test in those cases was legislative reasonableness. Title VII, however, authorizes no such 'rationality' test in determining the propriety of its application. It represents a flat and absolute prohibition against all sex discrimination in conditions of employment. It is not concerned with whether the discrimination is 'invidious' or not. It outlaws all sex discrimination in the conditions of employment." (Cite omitted). 519 F.2d p. 667.

10. The Court concludes the denial of employment to plaintiff was a violation of her rights under Title VII. This is the real question in this case. In keeping with the general policy in the Federal Courts to avoid unnecessary constitutional questions, the Court makes no decision on the issue of a possible constitutional violation of plaintiff's rights.

11. Since plaintiff's rights under Title VII have been violated she is entitled to back pay for the fall semester of 1972 up until November 1, 1972, the date plaintiff and her physician predicted that a substitute would be necessary. In addition, the Court pursuant to 42 U.S.C. § 2000e–5(k), directs defendants to pay plaintiff's attorney's fee in the amount of One Thousand Two Hundred and No/100 ($1,200.00) Dollars.

AND IT IS SO ORDERED.

## ON MOTIONS TO AMEND FINDINGS AND FOR RELIEF FROM ORDER

This matter is before the Court upon defendants' motions seeking amendments to

and relief from this Court's Order filed January 22, 1976.

Rule 52(b) of the Federal Rules of Civil Procedure provides, in part, that "Upon motion of a party made not later than ten days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly."

Defendants seek amendments in the form of (1) additions and deletions of certain words to the first sentence of Findings of Fact No. 7 and (2) additional findings of fact. After reviewing the record, considering the defendant's requests and the plaintiff's objections thereto, the Court feels that certain modifications are appropriate for the purposes of clarification and in keeping with this Court's desire that its Order convey a correct understanding of the factual issues determined by the Court. Therefore, *the first sentence only of Findings of Fact No. 7 is hereby amended* to read as follows:

"7. The reason defendants did not renew or offer to renew plaintiff's contract for the fall semester of school year 1972–73 or the entire school year 1972–73 was because they believed a predicted long period of absence from the classroom would break the continuity of teaching for the students."

In addition, *Findings of Fact No. 8 is hereby amended in its entirety* to read as follows:

"8. Defendants show no examples of denials of employment because of anticipated physical disabilities as in the instant case. However, the Court finds defendants' actions in this case were made in good faith with legitimate interests for the educational system and its students in mind. It was the wish of the defendants to return plaintiff to her teaching responsibilities as soon as such could be accomplished with minimal disruption of instructional continuity. A logical breaking point in the instructional process is between the first and second semesters. Two separate efforts were made to achieve this end. First, the deposition of plaintiff's principal, J. Milton Butler, taken October 27, 1972 in Civil Action No. 72–1123 reveals his attempts to hire a Spanish teacher for the first semester so that plaintiff could return to that position the second semester. Secondly, plaintiff was offered, in January 1972, a teaching job as a reading teacher beginning the second semester; however, plaintiff refused this offer. In spite of defendants' good faith, defendants' action of non-renewal was directly attributable to plaintiff's then existing pregnancy."

Defendants make the additional motion for relief from final judgment pursuant to Rule 60(b)(6):

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment."

Defendants contend the relief sought is justified because this Court's Order is essentially bottomed on the June 27, 1975 Fourth Circuit Opinion in *Gilbert v. General Electric Co.*, 519 F.2d 661, which is on appeal. It is plaintiff's contention that there is a possibility the Supreme Court's decision would not be directly on point resulting in more confusion and more delay.

■ The Court feels that the Supreme Court decision may well decide controlling questions. *Gilbert* has been argued in the Supreme Court since defendants' motion and plaintiff's reply memorandum were filed; therefore, the decision will probably be forthcoming in the near future. In addition, it is significant that the relief to which plaintiff is entitled under this Court's Order is back pay for only two months. We are not dealing with a situation involving reinstatement, the delay of which would be burdensome and prejudicial to plaintiff. The Court concludes relief from the judgment is justified pending the Supreme Court's decision in *Gilbert*.

For the reasons stated above, defendants' motion to amend findings is granted with

certain modifications; and defendants' motion for relief from judgment is granting pending the Supreme Court's decision in *Gilbert.*

AND IT IS SO ORDERED.