EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff-
Appellant,

and

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, Plaintiff-Interve-
nor-Appellant,

v.

CHRYSLER CORPORATION,
Defendant-Appellee.

Nos. 80–1202, 80–1203.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1981.

Decided July 12, 1982.

Rehearing and Rehearing En Banc
Denied Sept. 7, 1982.

M. Elizabeth Bunn, Dorothy M. Smith
and Martin A. Scott, Detroit, Mich., Joel M.
Cohn, Lutz Alexander Brager, Ray Baca, E.
E. O. C.—Appellate Div., Washington, D. C.,
for plaintiff-appellant.

Jordan Rossen, U. A. W. Legal Dept.,
Detroit, Mich., for plaintiff-intervenor-ap-
pellant.

John C. O'Meara, Lawrence G. Campbell
and John K. Renke II, Dickinson, Wright,
McKean, Cudlip & Moon, Thomas G. Kienb-
aum, Detroit, Mich., for defendant-appellee.

Before EDWARDS, Chief Judge, KEN-
NEDY, Circuit Judge, and CECIL, Senior
Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr.,
Chief Judge.

This is an appeal from the decision of a
District Judge in the United States District
Court for the Eastern District of Michigan
denying motions for summary judgment
filed by plaintiff-appellants, the Equal Em-
ployment Opportunity Commission (EEOC)
and the International Union, United Auto-
mobile, Aerospace and Agricultural Imple-
ment Workers of America (UAW) and
granting a motion for summary judgment
filed by defendant-appellee Chrysler Corpo-
ration (Chrysler).

Since 1955, the plaintiff-appellant in this
case, UAW, and the defendant-appellee,
Chrysler, have maintained a collectively-
bargained for Supplemental Unemployment
Benefits Plan (SUB Plan) which seeks to
provide a guaranteed annual wage to
Chrysler employees. At the inception of
this litigation, the SUB Plan guaranteed
that the combination of SUB and state un-
employment compensation will add to about
95% of the employee's working wage if the
employee was laid off for certain reasons.
This case concerns the impact of two now
long dead discriminatory devices upon that
SUB Plan: Chrysler's mandatory maternity
leave policy, terminated in 1972, and the
policy of the Michigan Employment Securi-
ty Commission (MESC) that women laid off
pursuant to mandatory maternity leave pol-
icies could not collect state unemployment
benefits even if completely able to work.

Plaintiffs' complaint is based upon the fact that between 1965 and 1972 Chrysler followed a mandatory "leave of absence" policy which required pregnant women employees to leave work in the fifth month of pregnancy and not return until 60 to 90 days after the birth of the child, regardless of their ability to work during these periods. Appellants claim that this policy violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976), and resulted in a class of women employees being denied benefits which would have otherwise been paid under the SUB Plan negotiated between the UAW and Chrysler.

There is, however, no dispute about the fact that Chrysler terminated the mandatory pregnancy leave policy in June 1972. The case for the appellants is best stated in the UAW's brief:

## STATEMENT OF FACTS

### I. THE CORPORATION'S SUB PLANS

#### A. The Chrysler-UAW SUB Plan

Since prior to 1975, the appellant UAW and the appellee Corporation have negotiated as part of the parties' collective bargaining agreement a Supplemental Unemployment Benefits (SUB) Plan. The terms of the plan have remained the same for all relevant purposes since 1965 (Deposition of Irvin Richards, at 25–27, "A" 192–194).

The SUB Plan provides in pertinent part (Plan—Article I, § 1, Eligibility for Benefits):

"An employee shall be eligible for a Regular Benefit for any week beginning on or about December 1, 1976, *if* with respect to such week he:

(a) *was on a qualifying layoff,* as discussed in Section (3) of this Article, for all or part of the week;

(b) *received a State System Benefit not currently under protest by The Corporation* or was ineligible for a State System Benefit only for one or more of the following reasons;

(i) he did not have prior to layoff a sufficient period of employment or earnings covered by The State System;

(ii) exhaustion of his State System benefit rights." (Emphasis added)

Procedurally, the Plan operates as follows. The Corporation initially determines the eligibility of the SUB applicant (Plan Art. V. § 2(a)). If the Corporation determines that the employee is eligible, it orders the trustee to make payment (Plan Art. V. § 2(b)). If the Corporation determines that the employee is ineligible for SUB, the aggrieved employee may appeal the decision to the local committee at his/her plant, if one exists (Plan Art. V. § 3(b)). From there (or if there is no local plant committee after the initial denial, from that decision), the employee may appeal to the "Board of Administration" (Plan Art. V. § 3(2)) which is composed of six (6) members, three selected by the Union and three by the Corporation (Plan Art. V. § 2(a)). If on appeal the Board of Administration rules that the employee is eligible, the Corporation then orders the Plan Trustee to pay the benefits. The Board of Administration does not have the authority to direct the trustee to pay.

#### B. Chrysler's SUB Plan for non-Union employees

Since 1965, there has also been in existence a SUB Plan for non-union Corporation employees (A. 189–191). The substantive terms of that plan have been identical to the Chrysler-UAW Plan (A. 189–190, 194–195). However, the procedure differs insofar as the Corporation makes the sole determination of eligibility; there is no appeal procedure to a Board of Administration or otherwise (A. 189–190, 194–195, S.A. 3, 4).

### II. BACKGROUND OF THE DISPUTE

As indicated above, this action seeks relief for women workers who were systematically denied SUB pursuant to a Corporation policy which violates Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In order to understand the present corporate violation, however, it is necessary first to explicate fully the circumstances

surrounding the layoffs giving rise to the weeks of unemployment for which SUB is sought.

For years prior to 1965 and continuing until 1972, the Corporation had in effect a mandatory maternity "leave of absence" policy. Pursuant to the policy in existence from at least 1965 to 1971, pregnant workers were forced out of work at the end of their fifth (5th) month of pregnancy and were not permitted to return until six (6) weeks after the birth of the baby (S.A. 39–43). In April 1971, the policy, was altered slightly, but the Corporation persisted in forcing women workers off the job when they were able and available to continue working (S.A. 52, 53). In June 1972, the mandatory maternity leave policy was dropped altogether (S.A. 44–51).

During the period when the Corporation's policy was in effect, women laid off pursuant to that policy in Michigan did not receive State unemployment insurance benefits ("State System Benefits") due to the policy of the Michigan Employment Security Commission (herein "the MESC"), the Michigan agency entrusted with the administration of the Michigan Employment Security Act, to deny benefits to women placed on mandatory maternity leaves of absence. Accordingly, they were ineligible for SUB payments under Art. I § 1(b) of the Plan, quoted above. Subsequently, this state policy was struck down as contrary to federal law in a decision rendered by the Honorable Charles W. Joiner. *UAW v. Taylor*, C.A. No. 4–70066 (E.D.Mich., July 1974),* affirmed by the Sixth Circuit in an unpublished opinion Nos., 76–1474, 76–1966, 76–1967 (1977), *cert. denied* sub. nom. *Firestone Tire & Rubber Co. v. Taylor, et al.*, 435 U.S. 970, 98 S.Ct. 1610, 56 L.Ed.2d 69 (1978). The opinion and orders issued in that case required the MESC to process or re-process the claims of all women denied unemployment insurance pursuant to the unlawful policy and the claims of all women who never applied for benefits because of the futility of doing so but who, if they had applied, would have been denied pursuant to the policy. (Addendum, —.)

Under the terms of the *Taylor* order, to receive retroactive unemployment compensation, each class member had to show before the MESC that she was forced out due to pregnancy, that she was able and available to work during the period for which she sought benefits and that she either applied for and was denied benefits or would have applied but for her knowledge of the existence of the unlawful policy (Addendum, 46).

Chrysler was a party to each of the proceedings before the MESC involving its female employees. The Corporation protested the payment of state system benefits of most, if not all, Chrysler workers claiming under *UAW v. Taylor, supra*.[4] It was not until 1976 that Chrysler ceased protesting claims for benefits of *Taylor* class members (Affidavit of John Thomas Kenney, a true copy of which is attached to the UAW Brief in Support of Motion for Summary Judgment as to Liability, A. 336). Sample Chrysler state agency decisions are in the Appendix. (38–73, 701–710).

Subsequent to the receipt of state unemployment insurance *not under protest by The Corporation, Taylor* plaintiffs employed (or formerly employed) by the Corporation became eligible for SUB under Art. I, § 1(b) quoted above. The Corporation denied benefits to all *Taylor* SUB applicants for the reason that, according to Chrysler they were not on a qualifying layoff (A. 218–219, 337). Chrysler asserted no other reason for its uniform denials (A. 218–219). The Corporation denied SUB to women who were UAW members and to those who were not represented by a union (S.A. 3–38). On appeal, the Plan's Board of Administration upheld the Corporation's initial denial of SUB.[5] Chrysler did not order the trustee of the Plan to pay benefits.

The Corporation admits that it has a blanket policy of denying SUB to the women in question here (A. 337).

Brief for appellant UAW at 3–7 (footnotes 1, 2, 3 omitted).

---

\* 9 Empl.Prac.Dec. ¶ 9878 (E.D.Mich.1974).

[4] In fact, in July, 1975 the UAW filed charges with the EEOC complaining in part of Chrysler's policy of opposing claims for State benefits under *UAW v. Taylor, supra.* The instant case has its origins in this charge. See, for example, A. 38–73.

[5] Only eighteen (18) cases reached the Board of Administration (S.A. 4–39). The Corporation decided one case for a non-union employee (S.A. 3).

The District Judge who decided this case below did so on the ground that the exclusion of involuntarily unemployed women from the SUB Plan did not violate Title VII. First, he said that the SUB Plan did not, by its terms, cover women in that situation. Rather he held that the Plan was:

> aimed at a situation, or situations, which involve a disruption in the tenure of an employee through circumstances largely economic in nature and outside of the control of the employee and were not intended to cover a situation such as a pregnancy which is—at least is susceptible of being—a planned event and it was the concern of the drafters of supplemental unemployment benefits to provide economic security directed at ameliorating the ups and downs in the economy and that the plan was not aimed at covering a type of situation which was then covered under a completely different section of the contract.

*Equal Employment Opportunity Commission, et al. v. Chrysler Corp.,* No. 871013 (E.D.Mich. July 13, 1979) (bench disposition). Next, relying on *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and *Nashville Gas Co. v. Satty,* 434 U.S. 136, 143–146, 98 S.Ct. 347, 352–353, 54

L.Ed.2d 356 (1977), the District Judge held that the failure to include those involuntarily unemployed due to mandatory maternity leave in the SUB Plan did not constitute sex discrimination.

Appellants argue that denial of SUB to involuntarily unemployed pregnant employees places a substantial burden on women that men must not bear. *Nashville Gas Co. v. Satty, supra* at 138–143, 98 S.Ct. at 349–352. Thus, they argue that Chrysler's policy, while neutral on its face, illegally discriminated against women. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

Since we believe that this complaint, filed July 3, 1975, has long since been barred by the applicable statute of limitations, we decline to resolve this issue in the context of this record. This record clearly shows that Chrysler abandoned its mandatory maternity leave plan in June 1972. Moreover, as of July of 1972, this circuit struck down a quite similar policy applicable to school teachers. *See LaFleur v. Cleveland Board of Education,* 465 F.2d 1184 (6th Cir. 1972), *aff'd, Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Thus, all of the facts and law necessary to a timely complaint were known over a decade ago.[1]

Appellants rely on the nature of the SUB Plan. Employees are eligible for SUB when they meet two conditions: 1) they must be on "qualifying layoff" as defined by the Plan, and 2) they must be receiving state system benefit "not under protest" by Chrysler. Appellants, therefore, contend that their cause of action did not accrue until Chrysler stopped contesting the awards of state unemployment compensation in April 1976.

We recognize, of course, that lengthy litigation was required to establish the rights

---

1. Appellants have not claimed that Chrysler concealed relevant facts or that the corporation's actions unfairly prevented them from asserting their federal statutory rights. Accordingly, there is no possibility that Chrysler's conduct tolled the applicable statute of limitations. *See, e.g. Zipes v. Trans World Airlines,* —— U.S. ——, 102 S.Ct. 1127, 1132, 71 L.Ed.2d

234 (1982); *Wright v. State of Tennessee,* 628 F.2d 949 (6th Cir. 1980) (en banc); *Leake v. University of Cincinnati,* 605 F.2d 255 (6th Cir. 1979). In the instant case, plaintiffs have not chosen to pursue the claim that Chrysler's repeated protest of state employment awards itself violated Title VII.

of the affected class of Chrysler women employees to state unemployment compensation, which, under the labor/management contract, was a condition precedent to a valid claim for SUB. Nonetheless, as of at least July 1972, there was no legal barrier to the filing of the instant complaint—even though its prosecution might have been delayed until the completion of the *UAW v. Taylor* case.

We perceive no reason why the two cases could not have been timely filed simultaneously with their relationship to each other spelled out in the pleadings. In fact, however, all of these SUB claims, as well as the 1975 EEOC charges, were filed far beyond the applicable statute of limitations of 300 days. *See* 42 U.S.C. § 2000e-5(e) (1976).

The judgment of the District Court is vacated and the case is remanded to the District Court for dismissal on the grounds of the statute of limitations.